HENRY K. W. WELCH AND HEMAN H. BARBOUR, TRUSTEES OF THE HARTFORD COUNTY SAVINGS ASSOCIATION *vs.* TERTIUS WADSWORTH.

30 149
73 286

*W*, a member and director of a Savings and Building Association, borrowed of the association $10,000 upon his note bearing interest at 8 per cent. payable semi-annually. A large amount of interest at not less than that rate was from time to time paid and indorsed upon the note. Suit having been brought upon the note by the plaintiffs as trustees in insolvency of the association, the defendant suffered judgment by default in March, 1860, and the case was continued for a hearing in damages. By the law then existing the note was usurious, and the plaintiff could recover only the principal sum loaned, without interest, with a deduction therefrom of all payments of interest that had been made. After the default and before the hearing in damages, the legislature passed an act validating all contracts of the association with its members of this character. Held, 1. That this act was unquestionably retrospective, its only purpose being to validate certain contracts then existing between the corporation and its debtors. 2. That the contract in question was clearly within the purview of that act, and could not be exempted from its operation by general rules of construction, which must always yield to the clear intention of the legislature sufficiently expressed. 3. That the judgment by default merely admitted a cause of action: but while the precise character of the cause of action, and the extent of the defendant's liability

were yet to be determined by a hearing in damages and final judgment thereon, the cause of action was not merged in the judgment, and the rights of the parties, beyond the mere admission of a cause of action, were neither strengthened or impaired thereby. 4. That the act does not contravene that clause of the constitution of the United States which prohibits the enactment of a law impairing the obligation of contracts ; nor conflict with any provision of the constitution of this state. 5. That although the act did injuriously affect an antecedent legal right of the defendant to insist upon the forfeiture by the plaintiffs of the whole interest, yet, considering the nature of the right affected and all the circumstances of the case, it could not be regarded as so clearly an infraction of a vested right that it could not be vindicated. 6. That consequently the act must be sustained, and the plaintiffs were entitled to recover the principal sum loaned, and 8 per cent. interest, according to the tenor of the note.

The right of the borrower to insist that payments of usurious interest shall be applied in extinguishment of the principal, though a legal right, is not to the full extent an equitable one. And if a borrower goes into equity for relief upon a usurious contract, the court will compel him to pay the principal and legal interest, because he is under a moral obligation to do so.

A state law which makes valid a void contract, does not impair the obligation of a contract within the meaning of the constitution of the United States.

The power of the legislature to pass retrospective laws is not unlimited, but is controlled by the fundamental principles of the social compact. While therefore it is to be assumed that the legislature supposed they had authority to pass the particular retrospective act, and judged it to be reasonable and just, yet if it is shown to the court with entire clearness and certainty, to be so unreasonable and unjust in its operation upon antecedent legal rights that the action of the legislature can not be vindicated by any reasonable intendment or allowable presumption, it is the duty of the court to declare it void.

By the repeal of a penal statute all penalties fall, even if given to individuals, and suit has been brought and is pending for them.

The parties to usurious contracts hold any right they may have to the penalties given by the law, subject to a modification or repeal by the legislature, and a consequent direct or indirect validation of the contracts.

ASSUMPSIT by the plaintiffs, as trustees in insolvency of the Hartford County Savings Association, against the defendant, as one of the makers of the following note.

" $10,000,                          Hartford, April 20th, 1852.

On demand, after the first day of May, 1852, we, Tertius Wadsworth as principal, and E. S. Wadsworth as surety, jointly and severally promise to pay, to the order of the Hartford County Savings Association, ten thousand dollars, with interest after May 1st, 1852, at the rate of eight per cent., payable semi-annually, for value received.

(Signed)        TERTIUS WADSWORTH,
                E. S. WADSWORTH."

Welch *v.* Wadsworth.

Upon this note were sundry indorsements of interest paid to Nov. 1st, 1857, and amounting to $4,728$\frac{83}{100}$. Under the law existing at the time the loan was made, and at the time the suit was brought, the contract was usurious, and there could be a recovery only of the principal sum loaned, without interest, and with a deduction from the principal of all interest paid.

The case was brought to the December term of the superior court in the year 1858. At the March term of the court in 1860 the defendant suffered judgment by default, and the case was continued for a hearing in damages.

Upon the hearing in damages, at the March term, 1861, the court found the following facts :—

The Hartford County Savings Association is a corporation, legally organized under the act of 1850 authorizing the establishment of savings and building associations. When the note which was for a loan of $10,000 by the association, was executed by the defendant, he was a member of the association and one of its directors, and had been and continued to be such member and director from the first organization of the association down to the time of its failure in 1858. At that time it had gone into insolvency and the plaintiffs had been appointed trustees of the estate. In May, 1860, after the defendant had suffered a default, but before the hearing in damages, the legislature passed an act validating the usurious contracts of the association, where made with its own members, to the full extent of the interest provided for by the contracts.

Upon these facts the question as to what damages should be recovered was reserved by the superior court for the advice of this court.

*Welch,* for the plaintiffs.

The contract was validated by the act of 1860. The previous default is a mere admission of a cause of action, and that the plaintiffs are entitled to some damages. But the parties are still in court. And the question as to the extent of the defendant's liability is still pending, and final judgment is yet to be rendered. *Staple* v. *Hayden,* 1 Salk., 216. *Archbold's New Prac.,* 60. *Tuttle* v. *Cooper,* 10 Pick., 281. The

case stands since the default precisely as it would have stood after a demurrer and before a hearing in damages. 1 Wms. Saund., 228, note. *Havens* v. *Hartford & N. Haven R. R. Co.*, 28 Conn., 69. The note is not merged in the judgment, but is still a subsisting contract.

The defendant having been one of the directors of this bank, through whom alone it could transact its business, he is to be treated as having made this loan to himself. He is a trustee. It was his duty as such to have secured the interest by a lawful contract. And if he made an illegal contract, he ought not to be allowed to take advantage of his own wrong, to make a profit out of his trust estate and defraud his *cestuis que trust.* Act of 1850, de Savings Banks and Building Associations, sec. 3. Willard Eq. Jur., 751. 1 Story Eq. Jur., §§ 465 and note, 466 a. Ang. & Ames on Corp., § 279.

*Hubbard* and *Robinson,* for the defendant.

The defendant is not estopped from setting up the defense by the fact that he was a director of the corporation. If he has been guilty of negligence in not attending to his duties as director, this is not the place to assert it. He may have a defense to that claim. The court can not infer negligence as matter of law from the mere fact that he was director.

The statute of 1860 does not validate this contract. That statute was intended to apply solely to contracts outstanding as contracts when the act was passed. It was not intended to affect remedies on contracts. Its retrospective operation will be restrained within its narrowest limits. *Thames Manufacturing Co.* v. *Lathrop,* 7 Conn., 550. *Couch* v. *Jeffries,* 4 Burr., 2460. *Dash* v. *Van Kleeck,* 7 Johns., 493. *Gerry* v. *Stoneham,* 1 Allen, 319. *Bedford* v. *Shilling,* 4 Serg. & R., 401. *Moon* v. *Durden,* 2 Exch., 22. Not being in express terms applicable to contracts on which judgments or defaults had been taken, it will be held not to embrace them. Here the defendant had been defaulted. There was therefore a finding against him in law that he was liable to pay damages. The contract had become, if not technically, yet substantially, and for every purpose affecting the rights of the defendant, merged

in the judgment. The default admitted only such a liability as the law then inferred from the facts as they stood. It is manifestly unjust, after a party has thus tied himself up to the law as it stood, to make him, by new legislation, liable to more. Further, a party recovers on the ground of liability existing at the commencement of the suit. This is a fundamental principle. If the cause of action accrues after the suit is brought, no matter how soon after, the suit can not be maintained. No man can be sued except on the ground of a breach of duty. There must then have been a breach of duty when the suit was brought, and the breach of duty on which the plaintiff recovers must be the precise breach of duty that existed when the suit was brought. When we were sued we were not bound to pay the usurious interest. Can we then be made liable after the suit is brought to pay it? This would be so if suit had been merely commenced, much more if a default has been taken. Here the sole matter in dispute was the usurious interest. The very matter in dispute is changed from a void claim to a valid one, after the suit is brought, and after we have not only incurred large expense, but have made ourselves liable, in case of our defeat, to pay heavy costs to the other party.

Further, the act of 1860 is wholly invalid because it is a special act, repealing the laws of the state as to usury, not generally, but in favor of one individual, the Hartford Savings Association. The act exempts a single individual from a law that bears upon every other citizen. Such legislation is void. Laws must be general in their application.

BUTLER, J. It is apparent that if the contract on which this action was instituted is within the purview of the act of 1860, and the general assembly had power to pass that act, our decision must be controlled by it, and a consideration and determination of the other questions made in the case will be unnecessary.

The act was unquestionably retrospective. The only purpose expressed in or contemplated by it, was to validate certain existing contracts between the plaintiffs' corporation and

its debtors. That purpose, and the contracts intended, are stated in the most explicit terms, and the act must operate retrospectively, and upon them, if it operates at all. The contract in question is as clearly one of the class described in the act, and there is no opportunity to exclude it by construction. "All general rules of construction must yield to the clear intention of the legislature, sufficiently expressed;" and in this instance the intention is clear and thus expressed, and we must hold this contract within the purview of the act. If indeed it was true that at the time of the passage of the act this contract had been merged in a judgment, and the respective rights of the parties judicially determined—if those rights had ceased to exist under the contract as such, and had attached under a judgment as such—we might well hold that the act did not embrace or affect them. But that position, as taken by the counsel for the defendant, can not be sustained. The defendant had permitted a default to be entered against him. He had thereby admitted a cause of action; but he accompanied that admission by a motion to be heard in damages—to litigate further as to the character of that cause, and the extent of his liability under the contract, and that judgment be suspended until he could be heard. The parties are now here, on a finding of facts by the court upon a hearing on that motion, had since the passage of the act, and the judgment which alone can merge the contract and change the rights of the parties, remains suspended awaiting our decision.

Under such circumstances it can not be said, with truth, that the point in dispute had been judicially determined, or the rights of the parties strengthened or impaired by this litigation.

But the question made in regard to the power of the general assembly to pass the act of 1860, is one of more importance, though not of serious difficulty.

It can not be successfully claimed that it contravenes that clause of the constitution of the United States which prohibits the enactment of a law impairing the obligation of contracts. There was no obligation resting upon the plaintiffs' corporation which it could impair. So far as their duty reached

under the contract, it was performed. They had delivered their money to the defendant, and taken his promise to repay it, and the unperformed obligation was upon him. That obligation, so far as void, the legislature intended to validate. That such an act is not unconstitutional was settled by the supreme court of the United States in the case of *Satterlee* v. *Matthewson*, 2 Peters, 406. It was there holden that " a state law which makes valid a void contract, does not impair the obligation of a contract, within the meaning of the constitution of the United States."

Nor can it be claimed that the act in question conflicts with any provision of the constitution of this state. There is nothing in any of the provisions of that constitution which can restrain the legislature from passing retrospective laws ; and it is their practice every year to do so, and not unfrequently acts which affect antecedent vested rights.

But the power of the legislature in this respect is not unlimited. They can not entirely disregard the fundamental principles of the social compact. Those principles underlie all legislation, irrespective of constitutional restraints, and if the act in question is a clear violation of them, it is our duty to hold it abortive and void.

In the case of *Goshen* v. *Stonington*, this court had occasion to examine this subject, and a very clear and thorough review of it, in the light of principle and judicial determination, is contained in the opinion of the court as given by Chief Justice Hosmer. That decision has since been followed by others, and the law is well settled in this court. The rule deducible from those decisions and others is, that although it is to be assumed that the legislature supposed they had authority to pass the particular retrospective act, and judged it to be reasonable and just, yet they may have erred ; and if it is shown to the court, with entire clearness and certainty, to be so unreasonable and unjust in its operation upon antecedent legal rights, that the action of the legislature can not be vindicated by any reasonable intendment or allowable presumption, it is our duty to declare it void.

Tested by this rule the act in question must be sustained,

for although it undoubtedly affects injuriously the antecedent legal rights of the defendant under this contract, there is much of reasonable intendment and allowable presumption, derived from the nature of the right affected, and the circumstances under which the contract was made, to support the action of the legislature.

It may well be doubted whether the defendant has any antecedent rights of the nature of vested rights, created by this contract or existing under and by the terms of it, which the law can affect. His rights under and by the terms of the contract were, to receive and enjoy till demanded the money of the bank. Their rights were, to receive the interest as it fell due, and the principal sum on demand. The statute of usury operating upon it, avoided the plaintiffs' right to demand the interest, and the legal obligation of the defendant to pay it, and gave him the privilege of insisting, at any subsequent time, that payments made as interest and received as such, in performance of the contract, should in any legal proceeding be considered as payments of principal, and applied in extinguishment of his obligation to pay that principal *pro tanto*. This privilege of refusing to pay interest, and of having payments made as such considered as payments of principal, not under and by virtue of the terms of the contract, or any presumable intention of the parties, different from that which appears upon its face—(for we think it would be doing this defendant injustice to suppose he took this money originally with the deliberate intention of enjoying it without interest)—but under and by virtue of a general penal law, is the only antecedent right of the defendant which the act in question can affect. That privilege or penalty the legislature unquestionably intended to take away by validating the contract in that respect. The right of the defendant originated in a statute founded upon policy, intended to protect the needy borrower from the presumed temptation of the lender to demand exorbitant interest for forbearance. It was stringent, and doubtless salutary when money bore a small proportion to the aggregate amount of other property or the wants of trade, but now in this commercial age, when the circulating medium bears so large a relative proportion, and

money is often to be had for less than the legal rate, it is greatly modified, and generally waived or disregarded, in cases of commercial exigency, by men of the highest character and integrity.

That right of the defendant to insist upon the forfeiture by the plaintiffs of the whole interest, was a legal, but not to the full extent an equitable one. Courts of equity do not view the statute as courts of law are compelled to do. If the borrower goes into equity in respect to a security given in connection with the usurious contract, or to avoid extortion or oppression, the court will compel him to pay the principal and legal interest, because there is a moral obligation resting on him to do so, and it is equitable that he should be compelled to do it. In the case of *Kilbourn* v. *Bradley*, 3 Day, 356, this court said, " The statute against usury, on principles of public policy, renders void contracts upon usurious consideration. But the lender incurs no penalty, unless he actually takes usury ; and courts of equity, on relieving against oppression or extortion, order the repayment of the sum really loaned or due, with lawful interest. The moral obligation of the borrower to pay the principal sum actually loaned, with the lawful interest, is unimpaired."

So far forth then as the legislature by the act in question interfered to compel this debtor to pay the principal of this debt and the lawful interest, they have merely provided for the enforcement of an equitable and moral obligation, and to that extent the defendant can not complain that injustice has been done him. Have the legislature acted unjustly towards him in declaring that he shall fulfill his contract as to the excess of two per cent. which constitutes the usury ? And does it clearly appear that there could have been no facts before them which authorized their presumed opinion that the act was just and reasonable ? This is not an ordinary instance of usury. The case finds that the plaintiffs' corporation was organized in 1852, under the law of 1850, authorizing the establishment of savings and building associations, and that from the first organization down to the failure in 1858 he was a member and director of the company. Those associations

under the name of bonus were authorized to receive a greater sum than six per cent. on loans to their members. The redeeming feature of the law was that which confined the right to take an excess of interest to loans made to the members only, by reason of which each member in theory might receive from the excess paid by others a compensation for the excess paid by himself. The law was construed generally to authorize a contract to pay future interest in excess of the legal rate, but this court, in the case of *Mechanics Bank and Savings Association* v. *Wilcox*, (24 Conn., 147,) held that those corporations were confined, by a true construction of the law, to the taking of a bonus or excess of interest at the time of the loan ; and that construction avoided, so far forth, most of the contracts made by the numerous associations which had been formed under the act of 1850. In 1856 the legislature passed an act validating such contracts, but it was not broad enough to reach the class of contracts made by the plaintiffs' corporation. Is it not an " allowable presumption " that the legislature found, upon facts before them, that it was equitable to validate all those contracts on the ground that they were made under a mistaken construction of the law, and that the connection of the defendant with this company, and the benefits he had received, made it entirely equitable that he should fulfill the contract according to its terms ?

Again, the legislature may repeal a penal statute, and by the act of repeal, unless there be some saving clause, all penalties fall, even if given to individuals, and suit has been brought and is pending for them. *Butler* v. *Palmer*, 1 Hill, 324. Smith's Commentaries on Statute and Constitutional Law, 892–896. The parties to usurious contracts hold any right they can be presumed to hold to the penalties given by the law, subject to a modification or repeal by the legislature which may destroy them, and a consequent direct or indirect validation of their contracts. Is this act in substance and effect any thing more than such a repeal as to the particular class of contracts upon which it operates ? But further, in 1827 the banks of the state had generally adopted the practice of computing interest by Rowlet's tables, based on a computa-

tion of three hundred and sixty days for the year. This was a matter of convenience, not of intentional usury. But it gave the banks about eight cents excess of interest on every hundred dollars, and contracts amounting to millions of dollars existed which were usurious and void. The legislature passed a confirming act, and its validity was recognized by this court in the case of *Savings Bank* v. *Bates*, 8 Conn., 595. The act of 1827 was *ad idem* with the one in question, except that the usury taken in the contracts validated by the former was less, and that act was general,—circumstances to be regarded doubtless in weighing the reasonableness and justice of the acts, but not constituting a difference in principle.

Again, the record discloses the fact that the plaintiffs are trustees in insolvency of the company with whom the contract was made, and by fair presumption, the fact that this money is wanted to liquidate the just demands of creditors. Is it not an " allowable presumption " that the general assembly found that credits had been given the company upon the faith of this and other contracts, and under such circumstances as to the creditors of the company, that, as between them and the defendant, justice required that the contract should be enforced ?

Giving then due consideration to the nature of the defendant's right in relation to this contract, the history of our legislation respecting this class of corporations, the character of their loans and the defendant's connection with the one in question, the presumed fact that this contract was made in good faith and on the supposition that it was legal and with the full purpose of performing it, and the presumption that the legislature found it beneficial to him and equitable that he should perform it, and also the fact that the money is required to satisfy the just demands of creditors, we can not say that the act of 1860 is " clearly made to appear " to be an "infraction of a vested right which can not be vindicated ; " and we are of opinion that the plaintiffs are entitled to recover the principal sum loaned, and 8 per cent. interest, according to the tenor of the note.

In this opinion the other judges concurred.