## Case No. 3,537.

### DAGGS v. EWELL et al.

[3 Woods, 344.][1]

Circuit Court, W. D. Texas. Jan. Term, 1879.[2]

MORTGAGE FORECLOSURE—DEFENSES — JUDGMENT LIEN AND UNRECORDED DEED — REPEAL OF USURY LAW — CONSTITUTIONAL AMENDMENTS— RETROACTIVE EFFECT — CONSTRUCTIVE NOTICE FROM POSSESSION OF LANDS.

1. According to the jurisprudence of Texas, the lien of a judgment creditor without notice is superior to the unrecorded deed of the vendee of the defendant in execution.

2. The position of a bona fide mortgagee is still stronger, for he stands in the plight of a purchaser.

3. A deed of lands to a purchaser without notice, duly recorded, cuts off any claim thereto founded on a resulting trust.

4. The repeal of a usury law which forfeited all interest upon the usurious contract leaves the contract in full force, according to its terms, and no forfeiture of interest imposed by such law can be enforced.

[See note at end of case.]

5. The adoption by the state, after such repeal, of a constitution imposing penalties for usurious contracts, can have no effect upon such contracts.

6. A statute of limitation which cannot be pleaded against a note secured by a mortgage, cannot be pleaded against the mortgage.

[See note at end of case.]

7. Where a mortgage on lands is executed by the holder of the legal title duly recorded, to a

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]
[2] [Modified and affirmed in Ewell v Daggs, 108 U. S. 143, 2 Sup. Ct. 408.]

mortgagee without notice of any outstanding equitable title, no defenses against the mortgage are open to the equitable owner which cannot be made by the holder of the legal title.

8. Possession of land is constructive notice of the title of the possessor, but being constructive only, its effect cannot be extended to lands outside the limits of the possession, claimed by another party under the same title.

In equity. Heard upon pleadings and evidence for final decree.

The facts, about which there was little controversy, were as follows: On May 27, 1856, the defendant James B. Ewell and Mary W. Ewell, his wife, made and delivered to the complainant [Thomas J. Daggs,] their promissory note of that date for the payment to his order of $3,556, three years after date, and to secure the same executed and delivered to complainant a deed of mortgage on a tract of land in Gaudaloupe county, Texas, containing sixteen hundred and fifty-three acres of land. Said mortgage was duly proved for record on May 31, 1856, and recorded in the proper office on June 5, 1856. On March 9, 1872, the complainant began an action at law in this court on the said promissory note against James B. Ewell and wife, and recovered a judgment on July 14, 1873, against James B. Ewell for $3,530.95, the cause having been discontinued as to Mary W. Ewell, because at the date of said note she was under coverture. The note and mortgage were taken for complainant, who was a citizen of Virginia, by his agents in Texas. The suit was brought on the note only by attorneys of complainant, who did not know of the existence of the mortgage, the agents having delivered to the attorney the note without the mortgage. The defense set up by James B. Ewell to the note in the action at law was usury, the consideration of the note being $2,000 in cash, loaned by complainant to him, and the residue of the amount named in the note being interest at the rate of twenty per cent. per annum for the period of three years, computed annually. The land covered by the mortgage executed by James B. Ewell was, in the year 1853, the property of one Edward Dwyer. During that year the defendant George W. Ewell, who was a brother of James B. Ewell, made a contract for the purchase of the said premises. He paid, very soon after the making of the contract, to wit, in March, 1854, the cash payment, and on April 13, 1854, by deed of that date, Dwyer conveyed the land, not to George W. Ewell, the purchaser, but to James B. Ewell, his brother. This deed was soon after recorded in the proper office. This conveyance was made by Dwyer to James B. Ewell without the knowledge, consent or authority of George W. Ewell. The entire purchase money for the land was paid by George W. Ewell, who bought for himself alone. His brother had no part whatever in the purchase of the land or in the payment of the consideration. The excuse given by James B. Ewell for the conveyance of the land to

himself, and not to his brother, was that Dwyer wanted a mortgage to secure the deferred payment, and as George W. Ewell was living at a distance, it was more convenient to make the deed to James B. Ewell and take a mortgage from him. George W. Ewell, having paid the entire consideration for the land, discovered, in September, 1856, for the first time, that Dwyer had made the deed therefor to his brother, James B. Ewell, and he at once demanded of James B. a conveyance of the land to himself as its rightful owner, and on September 6, 1856, James B. Ewell conveyed, by deed of that date, the land to his brother George W. Ewell, and this deed was soon after recorded in the proper office. George W. Ewell never learned of the mortgage on said land given by his brother, James B., to the complainant until September, 1873. On December 4, 1855, George W. Ewell sold 555½ acres of said tract of land to one James B. Wilson, and gave him a bond for title, and on March 1, 1857, made him a deed for the land so sold to him. During the years 1855, 1856, 1857 and 1858, James B. Wilson resided on the tract of land purchased by him of George W. Ewell, and made improvements and paid the taxes thereon. When the mortgage to Daggs was made by James B. Ewell, neither Daggs nor his agent had any actual notice of the equity of George W. Ewell in the land which the mortgage conveyed, and the only constructive notice of any title adverse to that of James B. Ewell was the possession by Wilson of 555½ acres of the tract covered by the mortgage, and Daggs had no actual notice of that possession. In short, the testimony established, on the one hand, that the mortgage was taken by Daggs in good faith, to secure a loan of money made by him to James B. Ewell, who held the legal title to the land, without notice to Daggs of any equitable title in any one else, save the constructive notice arising from the possession by Wilson of a part of the tract, and, on the other hand, that George B. Ewell bought the land in good faith for himself, paid for it with his own money and never had any notice till September, 1856, that the title had been made to his brother, James B. Ewell, save that constructive notice arising from the registration of the deed to James B. Ewell in 1854, and never had any notice of the mortgage to Daggs till September, 1873.

Wm. M. Walton and John A. Green, for complainant.

A. M. Jackson and David Sheeks, for defendants.

WOODS, Circuit Judge. The case presented in the bill of complaint, which is simply a suit to foreclose a mortgage given to secure a note made by the mortgagor, ought to prevail unless the defendants have succeeded in making good some one or more of the defenses set up by them. The defense made by the heirs of James B. Wilson, who was in

possession of 555½ acres of the mortgaged premises at the time the mortgage was executed, claiming title thereto under a bond for title given by George W. Ewell, the equitable owner of the land, is conceded by complainant to be good, his possession being constructive notice to Daggs, or his agent, of the equitable title of Wilson. The only controversy is, therefore, between Daggs and George W. Ewell.

It is the settled jurisprudence of Texas, that even the lien of a judgment creditor, without notice, is superior to the unrecorded deed of a vendee of the defendant in execution. Grace v. Wade, 45 Tex. 522. The case of a bona fide mortgagee, without notice, is much stronger, for he stands in the plight of a purchaser. The claim of defendant George W. Ewell, that the registration laws of the state have no application to his equity in the mortgaged premises because the same was a resulting trust, will not hold. The defendant George W. Ewell, sets up, by way of defense, that the note to secure which the mortgage was given, was usurious, that the real consideration was $2,000, money loaned; and that the residue of the amount for which the note was given, was made up of interest at twenty per cent. per annum; that at the date of the note, the laws of Texas forbade the taking or receiving of interest more than twelve per cent per annum, and forfeited all interest if that rate was exceeded. He claims that payments have been made on the note to the amount of $1,745, which should be deducted from the principal, leaving only $255 due. It seems to us to be a conclusive reply to this defense, that before suit was brought on the note, the constitution of Texas of 1870 went into effect, and by virtue of its provisions, repealed all existing usury laws, and this constitution continued of force until after the recovery of the judgment. See section 4, art. 12, Const. 1870. This left the contract, as made by the parties, in full force, and no forfeiture or penalty for the usury could be visited upon or against the party holding the usurious contract. Wood v. Kennedy, 19 Ind. 68. The doctrine seems to be well founded in principle and authority. U. S. v. The Helen, 6 Cranch [10 U. S.] 203; Norris v. Crocker, 13 How. [54 U. S.] 429; Maryland v. Baltimore & O. R. Co., 3 How. [44 U. S.] 534. The fact that the constitution of 1876 provided penalties for usurious contracts, could have no effect on a contract which, at the time of the adoption of that constitution, was valid and binding.

The defendant George W. Ewell claims to be protected against a decree of foreclosure by the limitation of four years prescribed by article 4604 of Paschal's Digest of Laws, which declares that "all actions of debt grounded upon any contract in writing, shall be commenced and sued within four years next after the cause of such action or suit, and not after." The complainant replies to this, that he has already brought suit on the note secured by the mortgage, and recovered judgment thereon, and that the limitation cannot be pleaded as against the mortgage, which is a mere incident to the note. Unquestionably this reply would be a good one to the defense of limitations, if set up by James B. Ewell, the maker of the note and mortgage. So far as he is concerned, the note not being barred, the mortgage is not barred. Thus, in Eborn v. Cannon, 32 Tex. 231, the supreme court says: "If the notes were a subsisting debt at the time of the institution of the suit, not barred by the statute of limitations, the mortgage executed contemporaneously to secure their payment was still valid as long as the debt remained unsatisfied. No matter at what time the power of the court was invoked for its correction and foreclosure, and for a decree to subject the mortgaged property to the satisfaction of the debt, it was opportune, if the jurisdiction of the court over the debt itself was not ousted. The mortgage was but an incident of the debt, and the incident in law, as in logic, must abide the fate of its principal." See, also, Perkins v. Sterne, 23 Tex. 561; Duty v. Graham, 12 Tex. 427; Flanagan v. Cushman, 48 Tex. 241. But George W. Ewell insists that, conceding that the mortgage is not barred as to James B. Ewell, yet it is as to him, that he can be in no worse plight than if he had signed the note and mortgage, and if he had done so the lapse of time would have barred any relief as against him. There seems at first sight to be much strength in this position, but we do not think it will stand scrutiny. The legal title to the mortgaged premises was in James B. Ewell, and if the mortgagee was, at the date of the mortgage, without notice, either actual or constructive, of the equity of George W. Ewell, then he is not affected by that equity. He is in the same position that he would be if George W. Ewell's estate in the land commenced with the date of the deed made to him by James B. Ewell, in September, 1856. If this view is correct, then George W. Ewell is in the same position of any other vendee of a mortgagor whose deed bears date subsequent to the mortgage. He cannot set up any defense to the mortgage which is not open to the mortgagor. He is in no better position than the mortgagor. The mortgagor cannot confer on him any rights which he does not possess himself.

It follows, from this, that George W. Ewell, so far as his equities in the mortgaged premises were concerned, was bound by the judgment on the note against James B. Ewell. In other words, he was the privy in estate of James B. Ewell, and, so far as his estate in the land was concerned, was bound by what bound James B. Ewell. If the mortgage was good against James B. Ewell, it was good against him. If it was not barred as to James B. Ewell, it was not barred as to him. These views apply with like effect to the defense of usury. If that defense was

closed as to James B. Ewell, it was also closed as to George W. Ewell. We are of opinion, therefore, that as the mortgage in suit is not barred as against James B. Ewell, it is not barred as against George W. Ewell, and, therefore, that the defense of limitation and staleness of claim set up by George W. Ewell must fail.

It was strongly urged by counsel for George W. Ewell that as complainant conceded that the possession by Wilson of five hundred and fifty-five and one-half acres of the mortgaged premises was notice of his equity, that his possession of a part was notice to complainant of the condition of the title to the entire tract, that Wilson being in possession of a part, complainant was bound to inquire as to his equities, and such inquiry would have revealed the equities of George W. Ewell. We think this position would be sound if the complainant had had actual notice of the possession of Wilson. In that case he would, on inquiry as to Wilson's rights, have learned of the defect in James B. Ewell's title, and would have been bound to follow up the inquiry with diligence, and such inquiry would have revealed the equities of George W. Ewell. But it is not shown that complainant or his agent had any actual notice of the possession of Wilson. The possession of Wilson was, therefore, constructive notice to him of Wilson's rights only, and that notice, being constructive, could not extend its effects beyond Wilson's possession: Watkins v. Edwards, 23 Tex. 443. The case seems to be one where the equities are equal. In such a case the legal title which is in the mortgagee must prevail.

After considering with care the several defenses set up against the decree sought by complainant, we are of opinion that none of them can prevail, and there must be a decree of foreclosure and sale of so much of the mortgaged premises as are not covered by the claim of the heirs of Wilson.

[NOTE. On appeal by defendant George W. Ewell alone the decree in this case was modified in respect to the amount of the judgment and the rate of interest, and was then affirmed on substantially the grounds stated in the foregoing opinion. 108 U. S. 143, 2 Sup. Ct. 408. In regard to the effect of the repeal of a usury law upon existing contracts, the court, through Mr. Justice Mathews, says:

["The effect of the usury statute of Texas was to enable the party sued to resist a recovery against him of the interest which he had contracted to pay, and it was, in its nature, a penal statute inflicting upon the lender a loss and forfeiture to that extent. Such has been the general, if not uniform, construction placed upon such statutes. And it has been quite as generally decided that the repeal of such laws, without a saving clause, operated retrospectively, so as to cut off the defense for the future, even in actions upon contracts previously made. And such laws, operating with that effect, have been upheld as against all objections, on the ground that they deprived parties of vested rights, or impaired the obligation of contracts. The very point was so decided in the following cases: Curtis v. Leavitt, 15 N. Y. 9; Mechanics' & W. M. M. S. B. & B. Ass'n v. Allen, 28 Conn. 97; Welch v. Wadsworth, 30 Conn.

149; Andrews v. Russell, 7 Blackf. 474; Wood v. Kennedy, 19 Ind. 68; Town of Danville v. Pace. 25 Grat. 1; Parmelee v. Lawrence, 48 Ill. 331; Woodruff v. Scruggs, 27 Ark. 26.

["And these decisions rest upon solid ground. Independent of the nature of the forfeiture as a penalty, which is taken away by a repeal of the act, the more general and deeper principle on which they are to be supported is that the right of a defendant to avoid his contract is given to him by statute for purposes of its own, and not because it affects the merits of his obligation; and that whatever the statute gives, under such circumstances, as long as it remains in fieri, and not realized, by having passed into a completed transaction, may, by a subsequent statute, be taken away. It is a privilege that belongs to the remedy, and forms no element in the rights that inhere in the contract. The benefit which he has received as the consideration of the contract which, contrary to law, he actually made, is just ground for imposing upon him, by subsequent legislation, the liability which he intended to incur. That principle has been repeatedly announced and acted upon by this court. Read v. City of Plattsmouth (decided at the present term) 107 U. S. 568, 2 Sup. Ct. 208. And see Lewis v. McElvain, 16 Ohio. 347; Johnson v. Bentley, Id. 97; Trustees of C. F. R. E. Ass'n v. McCaughy, 2 Ohio St. 155; Satterlee v. Matthewson, 16 Serg. & R. 169, 2 Pet. (27 U. S.) 380; Watson v. Mercer. 8 Pet. (33 U. S.) 88.

["The right which the curative or repealing act takes away in such a case is the right in the party to avoid his contract,—a naked legal right, which it is usually unjust to insist upon, and which no constitutional provision was ever designed to protect. Cooley, Const. Lim. 378, and cases cited."]