## THE STATE OF CONNECTICUT *vs.* JOHN H. ROMME, ADMINISTRATOR.

Third Judicial District, Bridgeport, April Term, 1919.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and GAGER, Js.

General Statutes, § 1667, enacted in 1917, provides that the State may, in a civil action and subject to the statute of limitations, recover from any person the sum that "has been or shall have been" expended by it for his support in a humane institution. *Held:*—
1. That this provision was clearly and unmistakably retroactive, as well as prospective, in its application; and that there was in reality nothing unfair or unjust in compelling such reimbursement.
2. That it was not unconstitutional because it applied to expenditures made prior to its enactment, nor, in permitting a recovery of such sums from the person cared for, or his estate, did it impair the obligation of any contract; since the State, in caring for its insane poor, as in the present case, acted solely of its own volition and in the performance of a well-recognized modern governmental duty.
3. That the State was not estopped from claiming reimbursement for its expenditures, merely because it had for several years received the balance of the cost of the support furnished, from the inmate's conservator, inasmuch as such conduct by the State could not have misled the defendant to his prejudice.

Argued April 9th—decided July 16th, 1919.

ACTION to recover moneys paid by the plaintiff for the support of the defendant's intestate in the Connecticut Hospital for the Insane, brought to and tried by the Court of Common Pleas in Fairfield County, *Walsh, J.;* facts found and judgment rendered for the plaintiff for $500.89, and appeal by the defendant. *No error.*

The State seeks to recover from the estate of Mary F. Webb the several amounts expended by it for her support in the Connecticut Hospital for the Insane for the six years immediately preceding her death, to wit, from October 26th, 1911, to October 26th, 1917. During that period its expenditures were at the rate

of $1.50 per week for the first portion of the time and $1.75 for the remaining portion. They amounted in the whole to $500.89, and for that sum judgment was rendered in the State's favor.

November 27th, 1879, Mary F. Webb was, by the Court of Probate of Stamford, committed to the Connecticut Hospital for the Insane as an indigent insane person. The commitment was made on the application of one Charles W. Smith acting for his wife, who was the sister and conservator of Mary. The statute then in effect provided that the State should pay $1.50 per week for the support of persons so committed, and a like amount by the person making the application. Mary remained in the institution continuously until she died, October 26th, 1917. During all this time payments for her support were made in conformity with the law as it was from time to time, to wit, in part by the State and in part by her brother-in-law or her conservator for the time being. The latter payments were made upon bills therefor rendered and receipted by the State as provided by statute.

Mary survived both her sister and brother-in-law, and at her death left a small estate of which the defendant is administrator. In due course the State presented to the latter its claim for the $500.89, which, having been disallowed, this action was brought.

*John H. Romme,* for the appellant (defendant).

*John W. Banks,* for the appellee (plaintiff).

PRENTICE, C. J. The language of § 7 of Chapter 335 of the Public Acts of 1917 (General Statutes, § 1667), under which this action is brought, is too definite and certain in its meaning to admit of doubt that the intent of the General Assembly was to authorize

recovery by the State from persons cared for under commitments to humane institutions, or from their estates, such amounts as, within the six years' limitation prescribed therein, it had theretofore expended or should thereafter expend for the support of such persons in such institutions. The provisions of the Act are unmistakable in so defining its scope, and in making it retroactive as well as prospective in its application. *Plumb* v. *Sawyer*, 21 Conn. 351, 355; *Welch* v. *Wadsworth*, 30 Conn. 149, 153.

As the utterance of the supreme legislative authority of the State, its mandate cannot be questioned unless it be that it is unconstitutional, or denied enforcement in the present instance unless that enforcement would result in a violation of some controlling legal principle.

That it is made retroactive in its application does not of itself militate against its constitutionalty. *Welch* v. *Wadsworth*, 30 Conn. 149, 155.

Neither does it, in so far as it undertakes to permit the recovery from the person cared for, or his estate, of expenditures made by the State prior to its enactment, impair the obligations of a contract. The statute is clearly divisible. In one part it authorizes recovery from the unfortunate or his estate; in another the right to secure reimbursement is extended so that other persons are made liable to respond. Were this action brought under the latter provisions, questions might arise which are not here presented. But it is not so brought. It is one whose sole purpose is to obtain reimbursement from the estate of the person cared for. The State, in making expenditures for the care and support of an insane person committed to an institution designed to provide the support and attention which he needs, enters into no contract relation with that person. It simply acts of its own volition, in

response to the dictates of humanity, in the performance of a governmental duty now recognized as resting upon a modern State and for the good of the individual concerned. There not only is no promise on the part of the State to the unfortunate or his personal representative, but no legal consideration for one. The burden which the State assumes and bears is assumed and borne as its purely voluntary undertaking, and not as a result of a contract obligation to that end entered into with him or other person representing him. Such was the situation in the present case. Mary Webb was incompetent and needed care. The State came forward and bore a part of the expense involved in furnishing that care. It did not contract with her or her representative to do anything. What it did it did of its own accord and that, too, for her benefit in her condition of misfortune.

The defendant contends that the State, by its conduct in paying a share of the cost of the unfortunate's maintenance and its receipt of the balance of that cost from her conservator upon bills rendered therefor by the State and receipted by it, has estopped itself from demanding from her estate any further sum for the period covered by such payments, rendition of bills and receipts. This claim is not well founded. The elements necessary to create an estoppel are not present. For example, it does not appear that the defendant's decedent or her representative was misled to his or her prejudice by anything done or omitted on the part of the plaintiff. The plaintiff's entire conduct had for its object the bearing of some share of the burden involved in her care in her unfortunate condition, and, in so far as it contributed thereto, relieved her estate of the responsibility which would otherwise have been cast upon it. By what the State did her estate, which the defendant is administering, was enhanced

and benefited. By making the repayment sought in this action it is placed in no worse a plight than it would have been had the State not proffered its assistance in the first instance. *Aetna National Bank* v. *Hollister,* 55 Conn. 188, 213, 10 Atl. 550.

It has been suggested in support of the claim that the statute ought not to be given a retroactive construction, that recovery by the State of payments made prior to the passage of the Act would be so unfair and unjust that it must be presumed not to have been within the legislative contemplation. This argument is based upon a premise more superficially plausible than sound. Reimbursement is sought from the unfortunate's estate left at her decease and not otherwise. That estate was primarily chargeable for her care and support and was directly benefited by the State's contribution to that end. The amount remaining in the defendant administrator's hands represents, in part at least, that benefit. What unfairness or injustice there can be in compelling repayment out of it of the State's contribution for the unfortunate's welfare, we are unable to discover. The consequence of such repayment will, of course, be that the estate to be divided among the expectant heirs, who permitted the unfortunate to become a public charge, will be diminished in amount, but the superiority of their position in either law or morals over that of the State is not apparent.

There is no error.

In this opinion the other judges concurred.