## STATE OF CONNECTICUT *v.* MARY METRUSKY, ADMINISTRATRIX (ESTATE OF VERONICA SARAFIN)

BROWN, C. J., BALDWIN, INGLIS, O'SULLIVAN and CORNELL, JS.

Argued April 14—decided June 2, 1953

*Ernest H. Halstedt,* assistant attorney general, with whom, on the brief, was *George C. Conway,* attorney general, for the plaintiff.

*James A. Dougherty,* with whom was *Walter A. Hayes,* for the defendant.

INGLIS, J. In this proceeding the state seeks reimbursement from the estate of Veronica Sarafin for the expense of supporting her son, John F. Sarafin, in state-maintained institutions for the care of the mentally ill. The state appealed from the disallowance of its claim by commissioners appointed by the Probate Court for the district of Greenwich, and the case has been reserved for the advice of this court.

The facts stipulated for the purpose of the reservation may be summarized as follows: From September 14, 1932, until after the death of his mother, John F. Sarafin was continuously confined in state institutions for the care of the mentally ill except for a brief period when he was on parole. The total cost of his care to the state, based upon per capita cost, was $9267.15. During the period of his confinement, his mother paid the state $3024.79, leaving a balance due, as claimed by the state, of $6242.36. Payments were made by the decedent in accordance with bills rendered quarterly. The bills rendered were for amounts figured at the rate of $3 per week for the earlier, and $5 per week for the later, portions of the period. None of the bills made any reference to per capita costs or indicated a charge other than that billed. Each of these bills was receipted as paid, and at no time during the lifetime of the decedent was demand made upon her for the payment of the balance of the per capita cost. In acknowledging receipt of each remittance, the commissioner of welfare

stated that it paid the account for the care of John F. Sarafin through a certain date at the billed rate. The decedent believed that upon payment of the bills rendered to her by the state she was under no further obligation to pay.

In April, 1945, Mrs. Sarafin collected the proceeds of an endowment policy on the life of her son. At that time she was behind in her payments to the state. She used a portion of the proceeds of the policy to pay the amount past due. In making this payment, her attorney wrote the commissioner: "Said check is enclosed in full payment of the bill enclosed herein for the same amount. . . . Thanks to your co-operation the State has now been paid in full to June 30th, 1945. . . ." The commissioner then issued a receipt showing the balance of the account for the care of John F. Sarafin to be zero after the payment was credited.

The change in the billed rate from $3 per week to $5 per week was made in January, 1948. At that time the commissioner sent Mrs. Sarafin a letter stating that the 1947 legislature had passed a resolution authorizing the commissioner of welfare to bill all indigent cases in state mental hospitals at a basic or minimum rate of $8 per week and advising her of the amount of the current per capita cost of care in Fairfield State Hospital, where her son was then confined. Mrs. Sarafin replied by letter that she was unable to pay $8 per week. Thereupon the billing was raised to $5 per week.

The questions reserved for advice are those set forth in the footnote.[1] They present for discussion

---

[1] "(a) Is the state entitled to reimbursement from the estate of Veronica Sarafin, mother of the patient in a state humane institution, for the difference between per capita cost and the amount paid by

the questions (1) whether the state is estopped from claiming further sums in reimbursement for the care of the decedent's son, (2) whether there was at any time an accord and satisfaction between the decedent and the state, and (3) whether, if no estoppel exists and there has been no accord and satisfaction, the state is entitled to recover the difference between the amount paid by the decedent during her lifetime and the per capita cost to the state of supporting her son.

The state's claim for reimbursement is founded solely upon the provisions of § 2663 of the General Statutes. That section relates to reimbursement of the state or a town or a city for the expense of the support of persons in humane institutions. In so far as it is relevant to the present case, it provides: "If any such person shall have a husband, wife, father, mother, child, grandparent, grandchild, conservator or guardian, who is able to reimburse the state or such town or city, wholly or in part, for the sums

---

such relative during her lifetime, said payments by the relative having been in accordance with bills rendered to him by the state?

"(b) Does the billing of and receipt from said Veronica Sarafin by the state of a lesser amount than per capita cost for care of her son in a state humane institution estop the state from recovering the balance of per capita cost from the estate of said Veronica Sarafin?

"(c) Does the billing of and receipt from said Veronica Sarafin by the state of a lesser amount than per capita cost for care of her son in a state humane institution constitute a contract with said Veronica Sarafin which would prevent the state from recovering the balance of per capita cost from the estate of said Veronica Sarafin?

"(d) Does the billing of and receipt from Veronica Sarafin by the state of a lesser amount than per capita cost for care of her son in a state humane institution constitute an accord and satisfaction of all liability of said Veronica Sarafin for care of such patient, so that the state cannot recover any further amount from the estate of said Veronica Sarafin?

"(e) Under the above stipulated facts, is the estate of Veronica Sarafin relieved from paying any further sums other than those heretofore paid for care of John F. Sarafin at Connecticut State Hospital and Fairfield State Hospital?"

expended by the state or such town or city for his support or benefit, the commissioner of welfare in the case of the state . . . may, in the name of the state . . . bring a complaint therefor in any court having jurisdiction thereof . . . against such husband or wife or any such relative, or his or her executor or administrator. . . . Said court may render judgment against the defendant . . . in favor of the state . . . for the sum so expended, or such portion thereof as the court shall find to be reasonably commensurate with the financial ability of any such defendant and the number and conditions of others dependent upon him."

The contention that the state is estopped from pressing its claim rests upon the fact that through the years the commissioner of welfare, by accepting payments from Mrs. Sarafin at the weekly rates charged without notifying her that any additional sums were due, led her to believe that she was under no further obligation. An estoppel does not arise in a case such as this merely from the failure of the commissioner to make demand for the full amount due. *State* v. *Romme,* 93 Conn. 571, 574, 107 A. 519. The basis of the estoppel claimed is the conduct of the commissioner of welfare, a public official. Whatever obligation Mrs. Sarafin had to reimburse the state was not founded on contract between her and the commissioner of welfare. It was an obligation imposed by statute. *State* v. *Romme,* supra, 573; *Reilly* v. *State,* 119 Conn. 508, 511, 177 A. 528. The commissioner of welfare has no authority to waive an obligation so imposed by law, and consequently the state cannot be estopped from enforcing it by any conduct on his part. See *State ex rel. LaVoie* v. *Building Commission,* 135 Conn. 415, 420, 65 A.2d 165; *Nicholaus* v. *Bridgeport,* 117 Conn. 398, 401, 167

A. 826. The state is not estopped from pressing its claim for reimbursement.

The defendant rests her contention that there was an accord and satisfaction between the commissioner and Mrs. Sarafin in part upon the fact that, after Mrs. Sarafin protested that she could not afford to pay $8 a week as demanded by the commissioner, the billing was raised to only $5 a week. If we assume, without deciding, that the commissioner had power to bind the state by entering into an accord and satisfaction, it is clear that no accord and satisfaction can be spelled out of this transaction. It is not stipulated that the commissioner ever agreed to accept the $5 weekly payments in full satisfaction of Mrs. Sarafin's obligation to the state. The defendant also claims that an accord and satisfaction was reached in 1945 when Mrs. Sarafin used some insurance moneys to pay past due bills. It appears, however, that her remittance at that time was made and accepted, not in settlement of her full obligation, but rather "in full payment of the bill enclosed herein," which was a bill figured on the basis of $3 per week. There had been no discussion between the parties of any further liability. It was not their intention, so far as appears, that the payment then made should be in full satisfaction of some disputed or unliquidated claim. For that reason the transaction did not constitute an accord and satisfaction. *Keller* v. *Rohde,* 109 Conn. 244, 248, 146 A. 288; *Bull* v. *Bull,* 43 Conn. 455, 462.

The remaining question is whether the state is entitled to reimbursement from the estate of Mrs. Sarafin for the difference between the cost of the support of her son figured on a per capita basis and the amount paid by her during her lifetime. The stipulation of facts is not adequate to enable us to give a

categorical answer to this question. Section 2663 imposes upon a relative of a patient in a humane institution an obligation to reimburse the state only if that relative is able to make such reimbursement. Moreover, the statute provides that, if the relative is liable at all, the judgment of the court need not be for the full amount which has been expended by the state. *State* v. *Martin,* decided this day. There is no stipulation of fact as to Mrs. Sarafin's ability during her lifetime to reimburse the state. Furthermore, the state is entitled, under the statute, to be reimbursed only for the actual cost to it of the support of John F. Sarafin. The actual cost of supporting a patient in an institution does not necessarily coincide with the per capita cost in that institution. What the actual cost is, is a question of fact, and the stipulation does not go so far as to state that in this particular case it was the same as the per capita cost. Since the stipulation is deficient in these particulars, we decline to answer the question.

We answer questions (b), (c), (d) and (e) in the negative.

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.