## THOMAS A. MEAD'S APPEAL FROM PROBATE.

No particular form is required for the presentation of claims to commissioners on an insolvent estate.

A claim was presented to commissioners as follows:—"For money loaned to and paid out for the decedent in his life time at his request at various times, with interest thereon—$10,000." Held that proof of a loan of $1,000 could be made and allowed under this presentation. (Two judges dissenting.)

A conveyed by absolute deed a piece of land to B to secure him for endorsing a note for him, a separate defeasance being executed but not recorded. The note not being paid when due it was agreed between A, B, and C, who had other claims against A, that C should pay the note and that B should convey the land to him, to be held by him as security for the amount paid and for his other claims. At this time A owed other debts beyond his means of payment, but C did not know the fact. It was found that all parties acted in good faith. Held that the law would not infer any fraud against the other creditors.

C afterwards, at A's request, made him further loans on an agreement that the land should be held by him as security for them. Held that as between A and C, A could not redeem without paying these loans.

The conveyance by A to B was for the expressed consideration of $1,000; that of B to C was for that of $2,000; the land was worth $5,000; both deeds were absolute. It seems that, there being no fraudulent intent, and no insolvent proceedings having been instituted, the considerations expressed did not limit the amount for which the land might be holden as security by C under his agreement with A.

A died insolvent. Held that, even if the conveyance to C was in fraud of the insolvent law, yet as it was not actually fraudulent against creditors, the administrator could not set it aside for the benefit of creditors.

A with the consent of C made contracts for the erection of certain buildings on the land held by C, and died about the time they were completed. The contracting parties threatened to file liens upon the property for their claims unless C paid them, which he did, and no liens were filed. Held that C stood simply as a general creditor for the money so paid, and that he had no lien on the land for the amount.

APPEAL from the doings of commissioners on the insolvent estate of Theodore H. Mead, deceased; taken to the Superior Court in Fairfield County. The following facts were found by the court:—

Theodore H. Mead, of Greenwich, in this state, died intestate, January 15th, 1876. Administration was granted on his estate; the state was represented insolvent, and commissioners were appointed. Within the time limited for the exhibition of claims against the estate, the appellant presented to the commissioners the following claim:

"Greenwich, August 12th, 1876.

"Estate of Theodore H. Mead, deceased,

To Thomas A. Mead, *Dr.*

| | | | | |
|---|---|---|---|---:|
| "To amount of | note | executed | June 20th, 1867, | $1,000.00 |
| " | " | " | Dec. 18th, 1872, | 406.23 |
| " | " | " | July 23d, 1872, | 1,000.00 |
| " | " | " | Feb. 28th, 1873, | 1,000.00 |
| " | " | " | July 28th, 1873, | 1,000.00 |
| " | " | " | April 12th, 1873, | 214.67 |
| " | " | " | Dec. 6th, 1873, | 1,000.00 |
| " | " | " | Dec. 23d, 1873, | 1,000.00 |
| " | " | " | Sept. 7th, 1875, | 598.81 |

"To which notes add all interest due on same.

"Also for money loaned to and paid out for said Theodore H. Mead in his lifetime at his request at various times, with interest thereon, $10,000."

There was due to the appellant on account of the notes particularly described, including interest to the last day limited for presenting claims, the sum of $4,700.45.

In addition to the above the appellant offered evidence to prove, and if such evidence was admissible it was found, that on or about the 3d day of July, 1875, he loaned to the decedent the sum of $1,000 and took his note therefor; that afterwards the appellant's house was entered by burglars, and the note was stolen and had never been recovered; and that when the claim was presented to the commissioners he could not recollect the date of the loan nor give a description of the note. The appellant desired to be allowed the same solely under the last paragraph of his claim as presented to the commissioners. The appellees claimed that the loan was not embraced in the claim as presented, and therefore objected to the evidence, but the court received it subject to the objection.

On the 2d day of August, 1873, Theodore H. Mead was desirous of obtaining a loan of $1,000, and requested Jabez Mead to indorse his note for that amount, dated July 28th, 1873, offering to secure him by conveying to him a tract of land in Greenwich then belonging to Theodore. Jabez indorsed the note and received from Theodore a warranty

deed of the land for the expressed consideration of $1,000, which was duly recorded. The deed was absolute on its face. A separate defeasance was signed by the parties, but never recorded.

The note was duly protested for non-payment at its maturity, October 31st, 1873, and remained unpaid until December 23d, 1873.

When the note matured Theodore Mead was largely indebted to Thomas A. Mead, the appellant, (who knew that Jabez held the land as security for his indorsement, but did not know whether the agreement relating thereto was in writing or by parol,) and afterwards promised to take up the note and relieve Jabez from his liability thereon, if Jabez would, with Theodore's consent, convey the land to him to be held by him as security therefor, and also for the amount which Theodore then owed him. This arrangement was agreed to by all the parties, and in pursuance thereof the appellant paid the note December 23d, 1873, and on the following day received from Jabez a warranty deed of the land, for the expressed consideration of $2,000, which was on the same day recorded.

Theodore Mead afterwards, from time to time, applied for and obtained from the appellant loans of money which are now unpaid, including the amount of the lost note, telling the appellant when he so applied that the land would be ample security for the proposed loans; and the loans were made by the appellant in the belief that they were secured by the land. All the transactions between the appellant, Theodore and Jabez Mead were in good faith between the parties, and without intent to injure or defraud other creditors of Theodore, unless such intent is to be inferred from the facts found. But in fact at the time the land was conveyed by Jabez to the appellant, and from that time to his death, Theodore was unable to pay his debts.

The value of the land embraced in the deeds was found to be $5,000.

The amount owing by Theodore Mead to the appellant before and on the 24th day of December, 1873, with interest

computed to the last day limited for receiving claims, was $2,932.35, exclusive of the note endorsed by Jabez Mead. The amount of this note, with interest computed as aforesaid, was $1,175.67. The amount of the loans afterwards made by the appellant to Theodore, exclusive of the loan on the lost note, and of the other claims hereinafter mentioned, with interest as aforesaid, was $637.43. The amount due on the lost note, with interest computed as aforesaid, was $1,075.17.

In the autumn of the year 1875 Theodore H. Mead informed the appellant that he desired to build an ice house on the land embraced in the deeds, to which proposal the latter gave his consent. Theodore thereupon made contracts with sundry persons for the necessary labor and materials. The ice house was completed at about the time of Theodore's death. A. R. Newman furnished Theodore with materials therefor, amounting to $270.07, beginning on the 18th of November, 1875, and ending January 12th, 1876. Theodore gave Newman his note, at ninety days, dated December 29th, 1875, for the amount of the materials then furnished, ($227.41,) which note Newman had discounted at a bank. Charles H. Weed had a claim of $100 for materials furnished for and used in the construction of the ice house. Solomon S. Gansey had a claim of $66, and Harman Mead one of $19 for labor thereon. The claims of Newman, Gansey, Weed and Harman Mead were all valid claims against Theodore. The parties severally claimed liens on the ice house and the land on which it stood, and the claims of Newman, Weed and Gansey were valid liens thereon, unless on the facts herein found they could not be valid. The parties, all of them, soon after Theodore's death, and within the time limited by law for filing certificates of lien, notified the appellant that they claimed such liens, and should file their certificates unless he paid their claims. The appellant, within the time limited, believing that each of the claims was a valid lien, promised to pay the same, and the certificates were not filed. The claims of Newman and Weed were paid within sixty days from the time when they ceased to furnish materials. The exact date when the claims of Gansey and Harman Mead

were paid was not shown. The Newman claim, with interest, amounts to $279.38; the Weed claim to $102.98; the Gansey claim to $67.98; and the Harman Mead claim to $19.57.

The appellant claimed that, upon the facts proved, these several claims should be treated as in equity assigned to him, and should be allowed to him as secured or preferred claims; but that if the court should rule otherwise, then that they should be allowed to him as claims not preferred. He also claimed that the land was and should be held to be a valid security in his hands for all of his several claims against the estate. The appellees claimed that the land could be held by him only as security for the Jabez Mead note, and for the amount actually owing to him at the time Jabez conveyed the land to him; and they objected to all evidence of parol agreements that the land should be held as security for subsequent loans. The court received the evidence subject to the objection.

The commissioners allowed to the appellant, on account of his claims so presented, the sum of $5,048.03, and found and reported that he had security for $3,347.81 of his claim, and that the value of his security was $5,000; and disallowed and rejected all his other claims.

Upon these facts the court reserved the case for the advice of this court.

*A. B. Woodward* and *H. W. R. Hoyt*, for the appellant.
*First.* As to the amount to be allowed.

There is found to be absolutely due to the appellant the sum of $4,745.45. In addition to this we claim the amount loaned on the lost note, viz., $1,075.17; and the ice house claims, $469.91.

1. The evidence in regard to the money loaned on the lost note is admissible. The statute relating to this subject (Gen. Statutes, p. 388, secs. 4, 5,) simply provides for "bringing in," "presenting" and "exhibiting" claims against estates to the administrator, executor, or commissioners, as the case may be, but prescribes no requisites of mode or form. Its intent manifestly is to require the creditor to

make known his claim in a reasonable manner, so that it can be fairly understood. This court in *Pike* v. *Thorpe*, 44 Conn., 450, said that though not positively required, it ought properly to be done in writing, as proof both of the fact of presentation and of the exact claim presented. The court has also said, in *Mills* v. *Wildman*, 18 Conn., 131, that "to require the technical rules of pleading in the proceedings before such a tribunal," (commissioners on an insolvent estate,) "would serve only to defeat their object, and to produce embarrassment and confusion, delay and expense." See also *Am. Board of Commissioners' Appeal from Probate*, 27 Conn., 353, in which the court say that "a clear, intelligent statement of the claim, one that commissioners can understand and act upon intelligently, is enough." The rules of pleading at common law are much more strict. 1 Saund. Pl. & Ev., 415; 1 Chitty Pl., 255; 1 Swift Dig., 603. The general clause contains "a clear, intelligent statement of the claim, that the commissioners can understand and act upon intelligently," and by its express terms it embraces such claims as the one in question. The creditor has a large number of notes and claims, which are particularized so far as can conveniently be done. It is found that he could not at the time give a description nor the date of the lost note; and to cover possible errors of description of his claims and to embrace those which are not so particularized, he makes this claim which is supposed to be broad enough to embrace all. The claim as presented refers to different loans and payments, and not to a single transaction. The objection, if sustained, would require a more stringent rule in this case than is required in actions at law.

2. The objection to the allowance of the ice house claims is that they arose after the death of the intestate. But such is not the fact. They were valid claims against him at his death. The appellant *paid the claims* after his death, under the circumstances shown in the finding. No one else can present the claims against the estate, and it would be inequitable and unjust if they should not be allowed the appellant under the circumstances.

*Second.* As to the securities. Undoubtedly it is the general policy of our law relating to the recording of land titles, that the records shall disclose, so far as may be, the true state of the title. Still in many cases rights must exist in relation to real estate which the records do not disclose. In this case it is found that Theodore Mead was unable to pay his debts when the deed to the appellant was made, and was so unable to the time of his death. It is not found that the appellant knew the fact; but it is found that all his transactions were in good faith, and without intent to injure or defraud the creditors of Theodore. And a present pecuniary consideration passed for the conveyance to him of the land. Unless the appellant's claim to the security is allowed, it must be in consequence of an inexorable rule of law which must in this case defeat justice. It has been suggested that the deed could not be good as to the indebtedness due the appellant at the time of the conveyance to him. If this claim is made, then we say—

1. It was good against all creditors who did not in Theodore's lifetime acquire specific liens on the property. *Haskell* v. *Bissell*, 11 Conn., 174.

2. Whatever may be the requirements of the law in regard to recording the exact state of the title, as against creditors, the transaction is good as between the parties, and as against every one whose debt is not sought to be avoided, that is, every one who was not a creditor at the time of the transaction. It was *bonâ fide*, and could not be avoided by subsequent creditors. It does not appear that any debt now due from the estate was owing at the time of the conveyance. The appellee is the representative of Theodore Mead. It is said he also represents creditors, and especially so since the estate is insolvent. As the representative of Mead, he had no more rights than Mead had, namely, to redeem the land by paying the debt as agreed. As the representative of the creditors, he has no more rights than the creditors had before Mead died, and their rights having accrued subsequently to the conveyance, were the same in substance as Theodore's, namely, to seize and appropriate such equitable right as he

had in the property. The reported cases recognize this principle. *Minor* v. *Mead*, 3 Conn., 289; *Andruss* v. *Doolittle*, 11 id., 283.

3. But why should not the security be good as against creditors? The cases hold that where a deed purports to be a mortgage, and the amount intended to be secured is not mentioned, so far as under the circumstances it reasonably can be, the mortgage is void as to creditors. The deed shows on its face that it is intended as a mortgage only. The law requires that it shall give reasonable information of what is intended to be secured by it. The deed in question on its face, and so far as the record showed, was an absolute deed. No creditor of Theodore's could possibly be induced by it to give him a false credit, or could be misled by it to his own injury. The transaction was not fraudulent in fact, but was *bonâ fide;* and so far as notice is given by the record to those who may have occasion to deal with the debtor, it is ample. A creditor may undoubtedly attach such equity as the debtor has in the property. *Harrison* v. *Trustees of Phillips Academy*, 12 Mass., 456; *Van Buren* v. *Olmstead*, 5 Paige, 9; 1 Jones on Mortg., §§ 337–339, and cases cited. The transaction is a very common one, resorted to in good faith, because in many cases it is the only adequate security. 1 Jones on Mortg., § 60.

4. The security is good as to the subsequently accruing claims. If it is good as to the prior claims, there would seem to be no question of this. The law relating to mortgages for future loans has no application to the case. The creditor has in his hands property of the debtor as security for a debt. The creditor increases his loan, with the assurance that the property shall be held as security for that also. The deed not being in form a mortgage, but an absolute deed, there is no more difficulty than in the case of a pledge of personal property. *Harrison* v. *Trustees of Phillips Academy*, supra; *Trull* v. *Skinner*, 17 Pick., 213.

5. As to the ice house claims, at least the three larger ones, they were valid liens on the real estate. The appellant took them up because they were so, and saved expense, and

possibly the property from sacrifice. It would seem just and equitable that he should not be the loser by it.

*J. B. Curtis* and *C. G. Child*, for the appellees.

1. Under a claim presented "for money loaned to and paid out for said Theodore H. Mead, in his lifetime, at his request at various times, with interest thereon, $10,000," the appellant offered proof of a note, the date and description of which he could not recollect. We contend that the proof was inadmissible. The object of presenting claims against an insolvent estate is to enable the creditors to judge of their good faith and genuineness. "A clear, intelligent statement of the claim, one that commissioners can understand, is enough." *Am. Board of Commissioners' Appeal from Probate*, 27 Conn., 353. But it must be at least that. The commissioners rejected the claim as presented, and the object of the appeal is to present to the Superior Court a new claim, essentially differing from that before the commissioners, after the expiration of the time limited by law. See also *Mills v. Wildman*, 18 Conn., 131.

2. The second question is, what construction must be put upon the deed given by Theodore Mead to Jabez Mead, dated August 2d, 1873, and accompanied by a written defeasance, not recorded. Jabez Mead loaned Theodore Mead $1,000; Theodore Mead conveyed to Jabez a tract of land in value $5,000; by the agreement Jabez was to reconvey on payment of the note; the expressed consideration was $1,000, and the deed was recorded. There can be no question that this deed, though absolute upon its face, was a mortgage. *Mills v. Mills*, 26 Conn., 219; *French v. Burns*, 35 id., 363. As between Jabez and Theodore therefore the interest of Jabez was measured by $1,000. On the 23d day of December, 1873, Theodore had borrowed of Thomas A. Mead further sums, including money to pay Jabez Mead's note, and desiring to secure the same Jabez at Theodore's request conveyed to Thomas the premises in question for an expressed consideration of $2,000, Thomas knowing of the condition under which Jabez held the property. Jabez Mead had no greater right in

the property than $1,000, with the interest for the time during which the note remained unpaid. Jabez Mead could only convey what he had, and that was a mortgage for $1000. As against creditors the whole transaction over and above that amount was void, as a secured claim. Had Jabez been a mortgagee of record, he could only have assigned his mortgage interest, and every creditor would have had a right to regard the security as measured by the amount expressed to be due. The secret arrangement between Theodore and Thomas ought not to better the transaction. The claim we make is within the principle of *French* v. *Burns*, supra. The mortgage to Jabez was merely an incident to the debt secured, and was extinguishable upon payment of the debt. *Huntington* v. *Smith*, 4 Conn., 237. If Theodore had by parol agreed that Thomas might have the land as security, it would avail nothing; how then as against creditors does an unknown arrangement increase the rights of Jabez in the premises? *Ayres* v. *Husted*, 15 Conn., 513. Had the deed been truthfully recorded as a mortgage, instead of falsely recorded as an absolute deed, the amount of indebtedness expressed would be all that creditors would be obliged to notice. *Pettibone* v. *Griswold*, 4 Conn., 158–162; *Bramhall* v. *Flood*, 41 id., 70. Is it so that the debtor is the better off by suppressing the truth and negotiating secret loans? There must be a description of the nature of the debt in order to bind creditors upon a contract of future advancements, as there was in the case of *Harding* v. *Mill River Manuf. Co.*, 34 Conn., 458. Assuming that Thomas not only took Jabez's place, but was entitled to his security upon the additional amount in the deed given to him, we claim on the above reasoning that such amount of security as against creditors is limited to $2,000, the expressed consideration of the deed. The whole object of Theodore's arrangement with Thomas, it is evident, was to obtain credit upon his property and suppress the fact of its encumbrance. The future credit might have been legally secured; it is not commended to the court by its evasion of legal steps.

3. We have proceeded upon the assumption that the conveyance in question is a mortgage, and as such binding upon

creditors. We claim however that the deed in question as against creditors is absolutely void. *North* v. *Belden*, 13 Conn., 376; *Pettibone* v. *Stevens*, 15 id., 19; *Ayres* v. *Husted*, id., 513; 1 Washb. R. Prop., book 1, ch. 16, sec. 22.

4. Theodore Mead died January 18th, 1876. Shortly before his death he built an ice house upon the premises referred to, and Thomas A. Mead bought up the claims. No one had put on any mechanics' liens under the statute; all threatened to in certain ways and at various times. The appellant says he is entitled to these claims as secured and to the exclusion of general creditors, on account of the right to a lien. Each of these claims for materials and labor was the claim of an original contractor. No lien was filed. By the statute no lien is *valid* unless *filed* within the statutory period in the town clerk's office. Gen. Statutes, p. 360, sec. 10. If Thomas Mead wanted to protect himself he should have filed the liens.

GRANGER, J. The first question presented by the record is, did the commissioners properly reject the appellant's claim for the amount due on the lost note?

It appears from the finding of the Superior Court that the appellant, among other claims, presented to the commissioners a claim for $10,000 for money loaned to, and paid out for, Theodore H. Mead in his life time, at his request at various times. The appellees claimed that the lost note was not embraced in this last claim, and objected to the evidence in relation to it. The commissioners rejected the evidence and disallowed the claim. We assume this to be so, as no other reason appears for the rejection of the claim. It does not appear that any suggestion even was made by the appellees that the claim was not an honest one, and they only insist before us that it was not properly presented, and that there-fore no evidence was admissible to prove it.

We think that this objection is entirely too technical, and ought not to prevail to defeat a just and equitable demand against the estate of the decedent. No more stringent rule as to certainty and particularity should be applied to a claim

presented to commissioners on an estate represented insol-
vent, than would be applied to the same claim if made the
subject of an action of general assumpsit brought by the
appellant against the deceased in his life time.   In such an
action the plaintiff might have declared that the defendant,
on any day preceding the date of the writ, was indebted to
him in the sum of $10,000 for so much money had and received,
and for so much money lent and advanced, and so on through
all the common counts; and can it be said that under such a
declaration he could not be permitted to prove that the
defendant justly owed him $1,000?   Suppose under such a
declaration the plaintiff had filed a bill of particulars pre-
cisely like the claim presented to the commissioners, and the
defendant made no objection to it on the ground of its gener-
ality, or on any other ground, until the time of trial, and then
when the plaintiff offered to prove that the defendant was
indebted to him at a certain time in the sum of $1,000, should
object to the evidence on the ground that this claim was not
embraced in the declaration or bill of particulars; would
such an objection be sustained?   We think it would not.
But if it were sustained, clearly the plaintiff would have a
right to amend his bill of particulars, and make it conform
more strictly and definitely to his real and just demand.   It
would not do to say that, because the plaintiff had demanded
in his declaration and bill of particulars $10,000, when only
$1,000 was due, he should not be entitled to prove or recover
anything.   This would be inflicting punishment upon a plain-
tiff for demanding more than was his exact due.   Again, if
the appellant had brought suit against the deceased, declaring
upon the note in question as a lost note, and added the com-
mon counts, claiming $10,000 due, and had failed on the trial
to prove the lost note, as described in his declaration, and
was unable to identify the note sufficiently to enable him
to recover upon the count specially describing it, the note
would still be evidence under the common counts, of money
lent or paid, or of account stated.   *White* v. *Brown,* 19 Conn.,
584.   But technical rules applicable to pleadings in cases in
the courts of law are not to be insisted on before commission-

ers on insolvent estates.   No declaration or other pleadings are usual or necessary.   The presentation of claims is not a technical proceeding.   "To require the technicalities of pleading before such a tribunal would serve only to defeat their object, and to produce embarrassment and confusion, delay and expense."   *Mills* v. *Wildman*, 18 Conn., 131.   A clear intelligent statement of the claim, one that commissionsioners can understand and act upon intelligently, is enough. They are clothed with legal and equitable jurisdiction, and the law prescribes no special form for presenting claims to them of either character, (*Commissioners for Foreign Missions' Appeal from Probate*, 27 Conn., 353,) and the real question before them is, whether the claim presented is a just claim against the estate.   The statement of the appellant's claim before the commissioners was clear and intelligent, and one which the commissioners ought to have understood, and one upon which they could have acted intelligently.   It is simply a claim for "money loaned to, and paid out for, said Theodore Mead, in his life time, at his request at various times, with interest thereon, $10,000."   Under this statement of the claim it was clearly the duty of the commissioners to inquire whether anything was justly due the appellant, and in such inquiry it was their duty to hear any evidence which tended to show what sum was so due.   The facts which he offered to prove not only tended to show, but did conclusively show, that the amount due him was, including interest to the last day limited for presenting claims, $1,075.17.   The appellant offered evidence to prove, and if the evidence was admissible did prove, before the Superior Court, and the court finds, that on or about the 3d of July, 1875, the appellant loaned to Theodore Mead the sum of one thousand dollars, and took his note therefor; that afterwards the appellant's house was entered by burglars, and the note stolen, and that it was never recovered; and at the time he presented the claim to the commissioners he was not able to recollect the date of the loan nor give a description of the note.   We think the evidence was clearly admissible for the plain and simple reason that it proved the real issue between the parties; an issue not

formed by any formal written pleadings, but resulting from the nature of the claim, and the character of the proceedings before commissioners on insolvent estates, and which was, whether anything was justly due the appellant, and if so how much. The appellant's claim to be allowed for the amount of the lost note and interest is founded in justice and equity, and we know of no rule of law that should preclude him from proving it and having it allowed. To say that this claim is not embraced in the last item of the claims presented is equivalent to saying that the greater does not include the less. We advise the Superior Court to allow the claim for the amount found due on the lost note.

The second question presented upon the record is, in substance, whether the transactions between the appellant and Theodore H. Mead, relating to the loans subsequent to the giving of the deed, were fraudulent as against creditors. Was the deed of Jabez Mead to the appellant void as against subsequent creditors of Theodore Mead? We do not understand that the appellees claim that the deed from Theodore Mead to Jabez Mead was void as against the creditors of Theodore, but they admit that this deed, in connection with the agreement between Theodore and Jabez Mead of August 2d, 1873, was good and valid as a mortgage to the extent of securing Jabez for his endorsement of the $1,000 note described in the agreement. This deed, though absolute on its face, was clearly a mortgage, and Jabez, upon being discharged from his liability as endorser by the payment of the note by Theodore, would have been bound to reconvey the land to Theodore. The legal title to the land vested in Jabez, and remained in him until he conveyed the premises to Thomas A. Mead, the appellant. This conveyance was made by Jabez with Theodore's consent, not for the purpose of defrauding the creditors of Theodore, but for the purpose of securing the appellant for the debt which Theodore then owed him, in addition to the note which Jabez had endorsed and which the appellant paid before the last deed was given. Was the deed of Jabez to Thomas A. fraudulent against the then creditors of Theodore? We think it was not. The

Superior Court finds that all the transactions between Thomas A. Mead, the appellant, Theodore Mead and Jabez Mead, were in good faith between the parties, and without intent to defraud other creditors of Theodore, unless such intent is to be inferred from the facts found. There was no actual fraud in this transaction, and we think none should be inferred to affect the rights of the appellant, for although the case finds that Theodore at the time of the execution of the deed and up to his death was unable to pay his debts, it does not appear that the appellant had then or ever had any knowledge of this fact. The deed was duly recorded, and furnished evidence to all the world that the land had been conveyed to the appellant for the expressed consideration of $2,000. The land was worth $5,000. This was sufficient to put creditors on inquiry, and if they had any suspicion as to the good faith of the transaction, they might have attached the interest of Theodore in the property, or instituted insolvency proceedings under the statute, and in that mode attacked the validity of the deed. So far as the conveyance to the appellant may be regarded, especially as to the later advances made upon the security of it, as fraudulent under the insolvent law as giving a preference to the appellant over other creditors, it could have been attacked by the other creditors through a trustee in insolvency—but in no other mode. If the time within which insolvent proceedings could have been instituted had not passed long before the death of Theodore Mead, his death would have barred the proceeding; and it being found that the conveyance was not fraudulent in fact, the administrator on his estate could not set it aside for the benefit of his creditors. The creditors stand now precisely in the same position that they did at the time of the death of Theodore, that is, as general creditors without liens acquired in the life time of the intestate. Judge WAITE, in giving the opinion of the court in *Haskell* v. *Bissell*, 11 Conn., 176, says:—"A creditor, merely as such, has no specific lien upon his debtor's property. He may indeed levy an attachment or execution upon it in his debtor's life time, and it may afterwards be sold for the payment of his debts. But the administrator or executor has no

power over property which the person whom he represents did not own at the time of his decease." That Theodore did not own this land at the time of his death in the full and literal sense of the term is beyond question. He owned an equity of redemption in it, and practically was the owner, and upon payment of the debt for which the land was pledged was entitled to a reconveyance. But before he could claim a reconveyance, he was bound to pay, not only the original debt, but all subsequent sums which he had borrowed of the appellant, and for which he agreed that the land should be held as security; and upon a bill to redeem he would have been required to do this without any special agreement to that effect. "It is a maxim in chancery that he who wants equity must first do equity himself. If therefore one man mortgages lands to another and afterwards takes up more money, though there is no special agreement that this shall be charged upon the lands, yet he will not be permitted to redeem without paying both debts." *Scripture* v. *Johnson*, 3 Conn., 211; 2 Swift Dig., 186. This is a proceeding in equity as well as at law; and we think the rules of equity require that the case should be disposed of upon the same principles that it would be governed by if Theodore Mead in his life time had brought a bill to redeem. The administrator has no greater rights in the property than the deceased had at the time of his death, either as it respects heirs or general creditors. Whatever just and equitable right Theodore Mead had in this land belongs to his representatives and creditors. That and that only the administrator is bound to see properly appropriated; his rights or duties extend no further. The agreement between the parties is tainted with no fraud; and it is just and right that it should be enforced.

The Superior Court is advised that Jabez Mead's deed is security for all the advances made upon it by the appellant, according to the terms of the agreement between him and Theodore Mead; that is, that the court should allow as secured claims the amount due the appellant from Theodore Mead at the time the deed was given, Jabez Mead's note and interest, and the amount of loans made after the deed was given.

The ice house claims, although valid claims against the estate, we think are not to be treated as secured claims. No liens were actually filed and perfected. The several claimants notified the appellant soon after Theodore Mead's death that they should file liens unless he paid their several claims. The appellant, believing they would file liens, promised to pay and did subsequently pay those claims.

Mechanics' liens are entirely creatures of the statute, and unless perfected according to its provisions they are inoperative. At the time the appellant paid the claims no legal liens had been placed upon the property, and none were afterwards so placed. These claims are allowable against the estate, but not as secured claims, and the Superior Court is so advised.

In this opinion the other judges concurred; except PARK, C. J., and LOOMIS, J., who dissented with regard to the allowance of the $1,000 note under the form in which the claim was presented.