## TOWN OF STAMFORD
*vs.*
## JAMES GRIFFIN, ADMR.
(Estate of Margaret Griffin Field)

Superior Court      Fairfield County      File No. 63178

MEMORANDUM FILED NOVEMBER 24, 1942.

*George Wise,* of Stamford, for the Plaintiff.

*Keogh & Candee,* of South Norwalk, for the Defendant.

Memorandum of decision on demurrer in action by town for reimbursement for relief furnished.

McEVOY, J. In this action the Town of Stamford, acting by its selectmen, seeks to recover damages for relief alleged to have been furnished by the town to two residents of that town, Margaret Griffin Field, and her husband, James Field.

After the claimed furnishing of the relief to Margaret Field, she died. James Griffin is the administrator of her estate and he is sued in that capacity.

The action was, originally, brought in one count which contained five paragraphs. The plaintiff now stands. upon an amended complaint which is made up of five counts, three of which contain five paragraphs and two of which contain eight paragraphs. The defendant has demurred to counts two, three, four and five.

In the demurrer to the second count of the amended complaint the defendant assigns as one reason of demurrer that the alleged promise of repayment, claimed by the plaintiff to have been made by the deceased, Margaret Field, was an oral promise to answer for the debt of another and that, therefore, it is within the purview of the Statute of Frauds.

The alleged promise is pleaded in the second paragraph of the second count in this way: that "the plaintiff gave relief to James Field....upon the promise of repayment by the said Margaret Griffin Field." The amplified pleading of the plaintiff now makes it plain that the alleged promise was oral and not in writing.

If there is a benefit to the promisor which he did not have before and would not otherwise enjoy and, in addition, the act is done upon his request there ordinarily arises an original undertaking not within the statute. *Reed vs. Holcomb,* 31 Conn. 360, 363; *Bartolotta vs. Calvo,* 112 id. 385, 391; *Sadd vs. Siegelbaum,* 124 id. 383, 385; *Meyers vs. Arm,* 126 id. 579, 583.

The promise, as alleged, was direct and not conditional. It was not within the purview of section 5982 of the General Statutes, Revision of 1930—the Statute of Frauds.

The second ground of demurrer to the third count seems to be that the third count contains an allegation of oral promise as does the second count. The third count contains no allegation of promise, oral or otherwise. Therefore this, apparent, ground of demurrer is not applicable to the third count.

The demurrer to the third count is based, mainly, upon the claim that the written notice set out (Exhibit A) in the plaintiff's pleadings does not disclose the nature of the claim upon which recovery is now sought.

The basis of that claim is that, in the claim as originally filed, while the amount upon which recovery is sought is there set out yet, nevertheless, the contents of Exhibit A, the claim as filed originally, show that the claim was made for relief given to James Field before October 14, 1929, and that the present attempt is to recover for relief given after that date.

Paragraph 5 of the third count sets out that the defendant, in writing, disallowed the claim of the plaintiff. This simply means that the defendant disallowed the claim which the defendant made and set out in Exhibit A. The record shows

that the defendant was not misled to his prejudice as to the amount or nature of that claim.

The record shows that that claim was properly presented to the defendant and that that presentation was conditioned so as to warrant and require that this court recognize it as, substantially, the same claim as is now recited by way of presentation in the pleadings in this court. *Mead's Appeal from Probate*, 46 Conn. 417, 428; *Hammett vs. Starkweather*, 47 id. 439; *Roth vs. Ravich*, 111 id. 649; *Duval vs. Birden*, 124 id. 43.

The demurrer to the third count raises the claim that the amended complaint does not allege that the beneficiary, Margaret Field, died without issue and therefore that this action does not lie.

This raises the question of the interpretation and application of the provisions of section 250f of the Public Acts of 1941. It would seem that the interpretation of that section, since it runs through the whole demurrer, may properly be discussed as applicable to all of the claims in the various counts and reasons of demurrer.

One of the main claims seems to be that the provisions of section 250f should not be construed as having been intended by the Legislature to be retroactive or retrospective.

This claim seems to be based upon the theory that section 250f of the Public Acts of 1941 set up and instituted a new and original cause of action. It did not. The italics in section 250f of the Public Acts of 1941 show what the new, amended matter was and that the purpose of the Legislature was to extend the right of action, which already existed in the State to "any town or city within the State."

Fundamentally, the town or city is a part of the State government. Departing from the original theory which inhered in the foundations of our State government, the town or city is now an adjunct of instead of a supporting base for the existence of the State.

The town or city, in and of itself, has no authority or right but derives its authority and right to exist, and to function, from the State.

The net result of this reasoning is to induce the conclusion that, whereas the State, as the principality, originally had this

right of action and has had it for a long period of years, the right, which by virtue of the various statutes then in existence inhered in the State, is now extended to its subdivisions.

This is not the creation of a new right but it is the extension of the right from the greater to the less. The "greater contains the less."

The present section (250f) follows the pattern of its predecessors with some exceptions.

"The history and progress of laws furnish a legitimate and most useful clew to their construction." *Quinebaug Bank vs. Tarbot*, 20 Conn. 509, 518.

The present section (250f) is nearly 60 lines in length. It had its origin in a section less than five lines in length, which was chapter 37 of the Public Acts of 1915, and which reads as follows: "When any person supported at the expense of the state shall die leaving personal estate not exceeding fifty dollars in value, the comptroller may sell it for the use of the state, unless some person interested in such estate shall take out administration thereon within ninety days after such death."

This section was approved on March 23, 1915, and it should be noted that its side note is entitled "Personal property of state paupers, Authority of comptroller to sell."

It is quite evident that, between that session of the Legislature and the 1917 session, the whole subject matter of the commitment and support of paupers and other indigents was given a considerable amount of study, because, in the 1917 session, chapter 335 of the Public Acts was adopted, which consisted of 12 sections.

In section 5 of that chapter the word "support" was construed and its purview was considerably extended.

In a modified way it then took on its present form.

In the sixth line of section 7, it was provided that "such person, or his estate, shall be liable to reimburse the state for the amount expended by the state for his support or benefit, and such amount may be recovered in a civil action in the name of the state."

It was also there provided that liability should inure in favor of the State and against various named relatives, including the husband, wife and others.

In the middle of that section, it was provided that the Statute of Limitations shall apply to any such claim and provision was made for the presentation of the claims to the executor or administrator of the estate within the time limited for the presentation of other claims but provision was also made there that "failure to so present such claim shall not prevent recovery from any other person thereby made liable therefor."

The provision as to the personal estate was then prescribed to be "not exceeding one hundred dollars in value."

By various amendments to be found in chapter 208 of the Public Acts of 1919, chapter 101 of the Public Acts of 1921, and the construction and interpretation of the statutes as found in chapter 75 of the Public Acts of 1923, chapter 17 of the Public Acts of 1925 and chapter 116 of the Public Acts of 1929, the limitation as to the recovery from personal property and the limitation as to amount were removed so as to be contained within the general statement that the recovery might be had "from such person, or his estate" and this without limitation.

However, in chapter 208 of the Public Acts of 1919, this section was amended, in part, to read that: "The statute of limitations shall *not* apply to any such claim." (Italics added.)

This amendment is cited to indicate the existence of the legislative intent to make this section of the statutes broader and more comprehensively inclusive.

The present section 1747 of the General Statutes, Revision of 1930, does contain a provision which is a modification and extension of the original provision as to the amount of personal property from which recovery may be had by the State.

In the original provision the amount of recovery from personal property was limited as to the amount which might be had from the estate or from the person. The net result is that the present section 250f not only provides that summary action may be taken by the State, town or city as to any funds in the estate up to $500, but it also provides for recovery of the whole value of support furnished to be recovered from the estate of the responsible relative.

Reliance is also had in the demurrer upon the provisions of

section 1718 of the General Statutes, Revision of 1930, which provides, substantially, that "the estate of any person dying *without issue,* leaving a husband or wife surviving, shall be liable for the support of such surviving spouse until re-marriage if such survivor shall become poor and there shall be no person or persons of sufficient ability....to provide such support." (Italics added.)

In the present action no reliance is had for a recovery upon the provisions of section 1718. This action is brought for recovery entirely under the provisions of section 250f.

Section 250f of the Public Acts of 1941 makes no exception and requires no allegation that the person who had this support died without issue. The opening line of this section is as broad as may be stated and reads as follows: "When any person shall have been supported...."

No reference is made to the qualification that the person, from whose estate recovery is sought, shall have died without issue. Upon the construction of the entire context of section 250f of the Public Acts of 1941, and its predecessors, the apparent expressed intention of the Legislature was to provide for general recovery from the estate of the deceased person with no limitation as to the extent of the recovery nor of the source nor of the person from which or from whom the recovery may be made. The real purpose of the amendment, as contained in the present section of the statute (250f) seems to be to include, not only the State, as a beneficiary plaintiff, but its subdivisions, the town or city.

The allegations of the present pleading bring the claim and the cause of action specifically within the terms of section 250f.

As to the reliance which is had in this demurrer upon the claim that this statute should not be interpreted to be retroactive or retrospective, it should be observed that in the defendant's brief on this demurrer it is said that section 250f "for the first time gave to a town or city within the State the right to bring a suit for reimbursement against the estate of a deceased wife for its support of her former spouse. Prior to section 250f this right was given only to the State."

That statement is true but the difficulty with that claim is this; that if we assume and accept the principle that "the greater contains the less", then the present amendment gave no new right against the estate, but merely specified that a

subdivision of the State, that is, the city or town, may recover, directly, instead of vicariously through the State, as it was formerly so provided.

Reliance is also had, in this demurrer, upon the provisions of section 6572 of the General Statutes, Revision of 1930, which provides that "no provision of the general statutes", not previously contained in the statutes of the State, which shall impose any new obligation on any person or corporation, shall be construed to have a retrospective effect."

For this interpretation the defendant relies upon the case of *State vs. Romme,* 93 Conn. 571.

In that case it was said, by our Supreme Court, that the statute is divisible, but, as pointed out in that case, the divisibility was as to persons and not as to time, as appears from the following excerpt (p. 573): "In one part it authorizes recovery from the unfortunate or his estate; in another the right to secure reimbursement is extended so that other persons are made liable to respond."

In so far as the retroactive construction is concerned, this was said (p. 575): "It has been suggested in support of the claim that the statute ought not to be given a retroactive construction, that recovery by the State of payments made prior to the passage of the Act would be so unfair and unjust that it must be presumed not to have been within the legislative contemplation. This argument is based upon a premise more superficially plausible than sound. Reimbursement is sought from the unfortunate's estate left at her decease and not otherwise. That estate was primarily chargeable for her care and support and was directly benefited by the State's contribution to that end. The amount remaining in the defendant administrator's hands represents, in part at least, that benefit. What unfairness or injustice there can be in compelling repayment out of it of the State's contribution for the unfortunate's welfare, we are unable to discover. The consequence of such repayment will, of course, be that the estate to be divided among the expectant heirs, who permitted the unfortunate to become a public charge, will be diminished in amount, but the superiority of their position in either law or morals over that of the State is not apparent."

For all of the reasons stated the demurrer is overruled.