This action was instituted in the name of the town by its first selectman and the members of its board of welfare against Roland J. Colburn, his wife and his father. Mrs. Adella F. Colburn was also named as a defendant but, at the trial, on motion of the plaintiff, she was dropped as a party.
Roland J. Colburn was married to Betty Colburn in 1948. They are the parents of a daughter now four years of age. About the time of the marriage, Betty's father conveyed a lot having a frontage of 150 feet *Page 336 
and a depth of 150 feet to the newlyweds, who proceeded to erect a modest three-room house thereon. The construction was made possible by a mortgage of $1200 taken by a savings bank, and the principal balance at present is $1156.25. On the tax assessment list of 1952, the house is valued at $1975 and the lot at $150.
Toward the end of August, 1951 Roland J. Colburn was seriously injured in an automobile accident. After a few weeks of care at the Hartford Hospital, he was transferred to the Veterans' Hospital at Rocky Hill, where he is still confined. The testimony is that he is paralyzed from the waist down. Because of his condition and his confinement, he has no earning power, nor does he have any property of any kind except his share in the house and lot.
Betty Colburn, with her child, occupies the house. She earns about $43 per week out of which she supports her household and is able to pass along small sums of money to her husband to relieve his hospital monotony, and she visits him as often as possible. Outside of her interest in the house and lot, her only asset consists of a balance of $200.39 in a bank account. She is trying to conserve this money so as to purchase a wheel chair for Roland's use when he leaves the hospital.
Between September, 1951, and July, 1952, both inclusive, the town has expended almost $2000 on the account of Roland J. Colburn. This sum includes $306.37 paid to the Hartford Hospital for his care and about $1700 paid to the state of Connecticut for his care at Rocky Hill, and some small items for groceries, etc.
This action is brought under § 2663 of the General Statutes. The complaint is based on an allegation that the town supported Roland J. Colburn as a pauper and paid sums for his support in a humane *Page 337 
institution. Section 2663 of the General Statutes provides for reimbursement of the state or any town or city which has supported any person as a pauper in a humane institution. The first portion of the statute imposes a direct and unconditional obligation on the recipient of such support or his estate, or both. The second portion of the statute imposes a liability for such reimbursement on certain relatives of such recipient, including a husband, wife, father, etc. This latter liability is not absolute, but depends on the ability of such relative to meet the obligation. State
v. Martin, 140 Conn. 121. If the relative is liable at all, the judgment of the court need not be for the full amount which has been expended by the town. State
v. Metrusky, 140 Conn. 26.
As already noted, § 2663 creates an absolute liability on the recipient of town aid for support and care in a humane institution, so that, if the statute applies here, Roland and his estate would be liable to reimburse the town for its expenditures on his behalf. At first glance, it appeared to this trier that § 2663 had no applicability to this case for the reason that the section appears in chapter 119 of title 19 of the statutes, which is entitled "Mentally Ill Persons," and the section itself refers to support of any "person in a humane institution, whether such person shall have been committed thereto as a pauper or as an indigent, or otherwise." Thus, care of a mental illness case and a commitment are indicated as the basis of recovery under the act.
All of the Supreme Court decisions which have been examined are instances where suit was brought for reimbursement for care of mental cases. However, Judge Quinlan, in State v. Jasinski, 16 Conn. Sup. 117,118, points out that while tubercular institutions come under a different title and § 2663 falls within the provisions concerning mentally ill persons, his opinion is that "Nevertheless, the wording of the *Page 338 
section is broad and general and certainly applies to other than mentally ill persons."
In ruling on a demurrer in the Jasinski case, Judge Roberts stated that he did "not feel that there is any significance as to the location of this section in the statutes" and that the term "humane institution" was intended to include a tuberculosis sanatorium maintained by the state because "humane" "necessarily carries an implication of compassion for men or animals in their sentient needs and feelings," citing Seymour
v. Attorney General, 124 Conn. 490, 497. See also Stamford v. Griffin, 11 Conn. Sup. 295.
A further study of the statute makes it appear that the reference to a person who "shall have been committed . . . as a pauper or as an indigent, or otherwise," is referable to the statute as it appeared years ago when its application was limited to mental cases. A person is not usually "committed" to institutions for the care of conditions other than mental ailments. The words "or otherwise" would seem to indicate that no significance attaches to the manner or means by which a person is admitted to an institution or his status at the time of his entry.
If this interpretation of the statute is correct, as it now appears to be, the court has no alternative but to enter judgment against Roland J. Colburn for the full sum expended on his behalf. This result is harsh, but inescapable under the statute.
The enforcement of such a judgment will work a real hardship on Roland, his wife and his daughter for it cannot be collected except out of his interest in the little house which provides present shelter for his dependents and a place for him to live when he leaves the hospital and attempts to rehabilitate himself. If they are forced out of this place, the future will be gloomy indeed for Roland, whose confinement in the Veterans' Hospital shows that he once answered his country's call to service. *Page 339 
In so far as this case concerns the liability of Roland's wife, Betty, under the second provision of the statute, it does not appear that the letter or spirit of the act requires or justifies any judgment against her at this time, for the law permits a judgment only for the amount expended by the town, "or such portion thereof as the court shall find to be reasonably commensurate with the financial ability of any such defendant and the number and conditions of others dependent upon him."
The town claims that the assessment on the house now occupied by Roland's wife and daughter represents only 60 per cent of the market value thereof. The evidence on which this claim is based is not very convincing, as it is to the effect that assessments in general, in the town, show only 60 per cent of the market value notwithstanding the plain mandate of the statute requiring assessments to be made on the basis of "present true and actual value." However, if a computation is made on that claim, it would show a total valuation of about $3500, against which there is a mortgage of $1156.25. On this valuation, which appears to be extravagant, Betty's one-half equity would be but about $1175, to represent her whole fortune.
On the other side of the ledger, she has the responsibility of caring for a young child as well as herself; she has a husband who has been hospitalized for almost twenty-two months and who is unable to support himself. Any judgment against her would deprive her of her place of abode. In these circumstances, the court must temper the wind to the shorn lamb, as it does not appear that any sum is reasonably commensurate with her ability to pay.
William Colburn, Roland's father, has lived in Coventry since 1919. All of his five children by his first marriage are married and are not dependant upon him. He lives with his second wife, the other *Page 340 
member of the household is her daughter who is self-supporting, although she does not contribute any money to the household expenses. William's take-home pay is about $58 or $59 weekly; his wife earns about $43 weekly; her daughter has her own earnings. William Colburn and his wife own their home, which is assessed at $3000, and it is subject to a mortgage of $1000. He is over sixty years of age and approaching retirement from the company he has served for about thirty-two years.
The circumstances of the case pose this question: What sum, if any, should be charged against William for the past care of his adult son which would be reasonable commensurate with his ability to pay, considering the conditions mentioned in the second part of the statute and the circumstances stated in the next preceding paragraph hereof?
Certainly, William should not be ordered to pay the full amount, for this would deprive him of his interest in his home at an age when his financially fruitful years are almost over. To be sure, his present living costs are comparatively low because his wife is employed, but he still has the primary duty of supporting her.
After reviewing all the circumstances, it is considered that the sum of $250 is all that William should be called upon to pay — such a sum is considered as reasonably commensurate with his financial ability and his other obligations.
 Judgment will enter in favor of the town of Coventry to recover $1902.81 from Roland J. Colburn, and to recover $250 from William D. Colburn; and judgment will enter in favor of Betty Ann Colburn and Adella F. Colburn.