STATE OF CONNECTICUT *v.* CAMILLE DICKINSON, CONSERVATRIX (ESTATE OF KENNETH E. OSHIRO)

CIRCUIT COURT                    FIFTH CIRCUIT
                                 FILE No. SPT 5-6

Memorandum filed November 22, 1966

*Mary P. Ryan,* assistant counsel, state welfare department, for the plaintiff.

*Barry R. Schaller,* of New Haven, for the defendant.

WISE, J.   The state of Connecticut, through its welfare commissioner, has petitioned the court for an order of support under § 17-324 of the General Statutes.   The defendant is the duly appointed conservatrix of Kenneth E. Oshiro, an incapable person.

Oshiro was first admitted to Fairfield Hills Hospital on January 2, 1959, and was discharged on December 30, 1960.   Thereafter, he was hospitalized at Fairfield Hills Hospital for intermittent periods as follows:   August through November, 1962; April through November, 1963; April, 1964, through May, 1965.   Oshiro is a Connecticut veteran with a disability not service connected.   The petition for sup-

port order alleges that Oshiro was a patient at Fairfield Hills Hospital, a humane institution maintained by the state for the care and treatment of mentally ill persons, having been admitted August 14, 1962, and being on extended visit May 21, 1965; that the current statutory maximum charge to patients for care in the institution is $44.98 per week; that the determination of the rate charged Oshiro was based on (1) workmen's compensation award, $18,500; (2) social security disability payments, interest from savings, stock dividends, and disability insurance payments, inter alia, $6363.17; and (3) social security disability benefits, $92 per month; and that at billed rates determined as aforesaid, there is due and owing for the period from April 12, 1963, through May 21, 1965, the sum of $3168.41. The petition seeks a court order for payment of such support as the court shall find to be reasonably commensurate with the responsibility of the defendant as provided in General Statutes § 17-295, and an order for payment of any arrearage.

The defendant denied all the allegations of the petition except the address of the defendant and the appointment of the conservatrix, and by special defense alleged: "The amount claimed due and owing arises from and is a result of unlawful retroactive applications of redetermined billing rates." In its reply, the plaintiff denied the defendant's special defense.

Section 17-295, entitled "Support in humane institutions," prescribes the basis and manner in which the cost for the support of persons in state humane institutions is determined and the standards for the payment by legally liable relatives. Subsection (c) provides in part: "No bill shall be rendered until the investigation provided for in this section has been made. Each patient and the hus-

band, wife, father, mother and child of such patient each shall be legally liable from the date of admission for the support of such person in such institution in accordance with his ability to pay . . . . The guardian, conservator and payee of social security or other benefits on behalf of any such patient shall be similarly responsible for the support of such patient, but shall be liable in such capacity only in accordance with the amount of the patient's estate or the benefits received, or both, as the case may be." Subsection (d) provides: "In the case of a veteran admitted to a state humane institution, other than a veteran with a service-connected disability for which he has been hospitalized in such institution, the determination of financial responsibility shall be referred by the commissioner to the veterans' home and hospital commission for said commission's determination under reasonable standards as to the amount to be paid by the veteran, or his estate, or the payee of benefits on his behalf, for such care. Such determination may be reviewed and revised by said commission in accordance with any change in circumstances, and shall be reviewed by it at least once a year. Said commission shall certify in writing to the welfare commissioner the charge so determined and any revision thereof. The relatives of such veteran shall not be liable as such for any part of the cost of his care in such institution."

Since Oshiro is a Connecticut veteran with a disability not service connected and was a patient at Fairfield Hills Hospital, a summary of his finances was submitted by the welfare commissioner to the veterans' home and hospital commission on March 11, 1963. Total assets then verified consisted of $92 in monthly social security payments; $40 per week on a workmen's compensation claim for a back injury sustained in California in 1956 and paid from a source in California; and $108 in cash. On the basis

of this summary of finances, the veterans' home and hospital commission made a rate determination of $2.08 per week on April 15, 1963, effective August 14, 1963. Billing was set up accordingly.

Although letters were sent by the welfare commissioner to the conservatrix beginning February 5, 1963, concerning her failure to file an accounting with the Hamden Probate Court, no reply was ever received from her. On March 2, 1964, a notice was received by the welfare commissioner from the Probate Court of a hearing on March 16, 1964, on an account filed which was not acceptable to the court. A copy of a new account was received by the welfare commissioner on December 9, 1964, which account covered the period from July 11, 1958 (date of the appointment as conservatrix) to October 15, 1964. In this account there appeared an item, "to amount received as Workmen's Compensation Award $18,500." This showed for the first time the receipt of such an amount. As a consequence, a resume of the items appearing in the account was submitted by the welfare commissioner to the veterans' home and hospital commission for a redetermination of the rate to be charged. On January 29, 1965, a redetermination of the rate was received from the commission; as of April 12, 1963, the rate to be billed was to be at the statutory rate, and that was the rate for the readmission of April 27, 1964, to November 20, 1964, and the readmission of November 21, 1964, to the extended visit of May 21, 1965. This amounted to $3168.41, which amount is agreed upon by the parties as correct according to the billing, but is denied by the defendant as due and owing.

The conservatrix had never notified the welfare commissioner by letter or telephone or in any manner that she had received the aforesaid sum of

$18,500, nor did the welfare commissioner know of the settlement of the claim resulting in the payment of that sum, or its receipt, until he received a copy of the account on December 9, 1964.

Reference is made to § 17-296, entitled "Hearing on billing" and providing that any person "aggrieved by the finding and billing of the commissioner under section 17-295 shall be entitled to a fair hearing in accordance with the provisions of section 17-2a." Section 17-2a provides for a fair hearing by the commissioner and sets forth the procedure for such a fair hearing. Section 17-2b requires that a fair hearing decision be rendered and provides for an appeal therefrom to the Circuit Court. The defendant did not apply for a hearing before the welfare commissioner on the redetermination of the new rate nor on the billings thereafter, although under §§ 17-2a and 17-2b the defendant was given the right to a hearing on that redetermination and the billings as well as a subsequent appeal to the court from an adverse decision thereon. In *State* v. *Griffiths,* 152 Conn. 48, wherein the plaintiff brought a petition under § 17-324 for an order for the support of beneficiaries of public assistance and the defendant did not avail himself of §§ 17-2a and 17-2b, the court stated (p. 56): "The defendant's failure to take advantage of the hearing and appeal provided for in §§ 17-2a and 17-2b precludes him from raising, on this appeal, issues which could, and should, have been raised in a hearing before the commissioner."

The defendant assumed the burden of proof of the contention raised by her special defense. The state was required to prove only as follows: Oshiro was a patient at Fairfield Hills Hospital for the period of time alleged; the statutory rate the state could charge in accordance with the standard set

out in § 17-295; the necessary investigation; the sufficiency of the assets and financial ability of Oshiro to warrant the determination of the rate billed. All this the state established. Does, then, the defendant's failure to request a hearing as provided for in §§ 17-2a and 17-2b, together with the provision in § 17-2b that no appeal may be taken from a decision made without a hearing, bar and preclude the defendant from asserting her special defense? It would appear so. In view, however, of the court's affirmative answer to the issues presented for adjudication, it becomes unnecessary to decide this question.

The issues presented for adjudication are: (1) Where a review and revision of the determination of financial responsibility by the veterans' home and hospital commission under § 17-295 (d) result in a certification of increased charges to the welfare commissioner for a period which antedates the certification and the commissioner issues a retroactive billing in accordance with this redetermination, may the Circuit Court make and enforce orders of support under the provisions of § 17-324 of the General Statutes? (2) May such orders be in an amount larger or smaller than any original billing by the welfare commissioner for any period for which hospitalization was provided?

Section 17-295 (c) places upon the welfare commissioner the duty of collecting from the patients' estates and legally liable relatives "from the date of admission for the support of such person in such institution in accordance with his ability to pay." Under § 17-295 (d), the rate determination "may be reviewed and revised . . . in accordance with any change in circumstances, and shall be reviewed . . . at least once a year." Upon certification of a determination to the welfare commissioner, he is

required to bill accordingly and collect from the responsible persons the charges billed. The language contemplates retroactive revision of charges upon discovery of new circumstances. The modification of charges for future billing only cannot be read into the language used. The language is clear and unambiguous. There is no prohibition against retroactive revision of charges. As stated in the plaintiff's brief, to which the court subscribes, "[t]his language together with the mandate of the statute to bill in accordance with ability to pay from date of admission clearly requires retroactive or retrospective change of billing upon discovery of new circumstances, not from the date of discovery, but from date of admission of the patient to the hospital."

It is the opinion of the court that the language of § 17-295 contemplates that the authorized billing by the commissioner may be retroactive. It is clear therefore that when, as in the instant case, a discovery is made of assets of a patient which were not known to be available at the time the rate of billing was first determined by the veterans' home and hospital commission and the commission is apprised of the changes in circumstances, it must review and revise its charges from the date of admission to the hospital, not from date of discovery of the changes in circumstances nor even from the date of change in circumstances. By the language of the statute, the determination of the rate to be charged is based upon a finding of ability to pay and is subject to modification at any time. *State* v. *Murzyn,* 142 Conn. 329, 334; see *State* v. *Jasinski,* 16 Conn. Sup. 117, wherein it was held in an action by the state against the executrix of a decedent who had been confined in a state tuberculosis sanatorium that "the mere billing and receipt of $4 a week does not constitute a contract in the face of the statute, which enables a recovery . . . of the full cost of

care and treatment according to ability to pay."
See also *Coventry* v. *Colburn,* 18 Conn. Sup. 335.

While § 17-298 permits the welfare commissioner
to institute a civil suit to enforce collections, it does
not preclude the commissioner from proceeding
under § 17-324, which provides a simplified proce-
dure to enforce collections without the necessity of
paying all court fees. Section 17-324 provides that
the Circuit Court shall have authority "to make and
enforce orders directed to the conservator or guard-
ian of any . . . patient or person . . . to the extent
of the income or estate held or received by such fidu-
ciary . . . in any such capacity." Section 17-295 (f)
provides that wherever a rate of billing has been
established as the result of a fraud of the patient
or a liable person or of concealment of assets, a
civil action may be instituted for the recovery of
the difference between the amounts actually billed
and the amount which would have been billed except
for the fraud or concealment, in the manner pro-
vided in § 17-298. But this is not the exclusive
means of securing collection even in this type of a
situation. Section 17-324 permits the welfare com-
missioner to use the procedure therein outlined for
the collection of support for any patient in a state
humane institution. The Circuit Court under
§ 17-324 has the jurisdiction to make and enforce
orders for the payment of such support.

The court realizes that the result arrived at in
the instant action may, at first blush, appear harsh
in that it substantially depletes the assets of Oshiro.
Yet, actually, if the award of the $18,500 had been
made known to the welfare commissioner when it
was received by the defendant (no determination
of the rate could have been made while the award
remained as a contingent and uncertain claim) the
amount would then have been taken into considera-

tion in the determination of the rate to be charged, and the increased rate would have been paid by the defendant during the period of time involved, thus expending the exact amount now found to be due and owing.

In the opinion of the court, the answer is "Yes" to issue number one and to issue number two.

Judgment may enter in favor of the plaintiff to recover from the defendant the sum of $3168.41 without interest. No costs are to be taxed.

The court commends counsel for their excellent and learned presentation of this case.